People of the State of Illinois, Plaintiff-Appellee, v. Willie Williams, Defendant-Appellant.

Gen. No. 52,366.

First District, First Division.

May 13, 1968.

Paul R. Held, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Willie Williams, was indicted on the charges of murder and voluntary manslaughter. He was tried before the Court sitting without a jury and was found guilty of voluntary manslaughter. The defendant was sentenced to the Illinois State Penitentiary for a term of not less than ten nor more than twenty years. He prosecutes this appeal from the finding of guilty and the judgment entered thereon. The defendant originally filed a direct appeal to the Supreme Court and that Court transferred the appeal here.

The defendant contends on appeal: (1) that the evidence introduced at trial sustained his claim of self-

■■■■■■

defense, and therefore, he was not proven guilty beyond a reasonable doubt; (2) that the court erred in failing to suppress his confession; and (3) that he was denied due process of law in that he was incompetently represented by counsel at trial.

On May 26, 1963, a social party was being given at 4841 South Park Avenue. The deceased, Willie Hamilton, was met at the party at around 12:15 a. m. by his brother, Walter; accompanying Walter were the deceased's wife, Thelma, and John Fagan. After about fifteen minutes, the three men left the party, leaving Thelma behind, and went to a nearby tavern for some drinks. They returned to the party at about 2:20 a. m. The deceased went inside to get his wife while the others remained outside. After about five minutes the deceased emerged from the dance hall along with the defendant.

Walter Hamilton testified that his brother then handed him his coat and sunglasses and said, "All we're going to do is talk." The deceased and the defendant then walked about two buildings away. Walter didn't pay much attention to the two men after they left his presence. However, shortly thereafter, Walter was startled by the sound of a gun firing. He looked in the direction of the discharge and saw his brother standing about three feet from the defendant with his hands in the air. According to Walter, the defendant then fired a bullet into his brother's body. Walter Hamilton further testified that the deceased and the defendant had not been fighting prior to the fatal shooting, and that his brother had no weapon.

Walter stated that after the shooting the defendant walked back into the dance hall. He came out shortly thereafter holding Thelma Hamilton by the hand. He then left her and walked in the direction of the decedent's body, and having looked down at the lifeless body of Willie Hamilton, proceeded onward. A short time later the defendant was arrested. The testimony of Walter

Hamilton was essentially corroborated by that of John Fagan.

Thelma Hamilton testified that during the time she had been separated from the decedent she had lived with the defendant. However, by the time of the incident in question she had been reconciled with her husband and was no longer living with the defendant. Mrs. Hamilton further testified that while she was present at the party (in her husband's absence) the defendant carried on a conversation with her, during the course of which he accused her of "going with" another man. Her husband then returned and asked her to leave with him. The witness testified that while she had not been present at the conversation which led to the two men stepping outside she had seen the defendant fire the fatal shot into her husband; and that the latter, immediately before he was shot by the defendant, had his hands raised and was not carrying any kind of weapon.

At trial, a confession given by the defendant was introduced in evidence. This confession consisted of a transcript of the answers given by the defendant to questions propounded by an assistant state's attorney and was signed by the defendant. It appears from the record that the confession was given approximately four hours after the defendant was arrested, and that prior to confessing, the defendant was not warned of his right to the presence of an attorney, nor was he informed of his right to remain silent.

In his confession, the defendant stated that he arrived at the party at around 12:30 a. m., and shortly thereafter the deceased entered along with his wife. Willie Hamilton then left the party. After the deceased left, the defendant began to talk with Thelma. Later that morning the deceased returned and asked his wife to leave with him. Willie Hamilton then asked the defendant to go outside for a "talk." When they got outside the decedent told his brother that he and the defendant were "just going

to talk." The two men then walked a short distance away, and the decedent challenged the defendant to a fight. The defendant further stated in his confession that Willie Hamilton then began to approach him and that he started to back up. He said he fired one shot in the ground, and since the decedent was still approaching him, he shot Willie Hamilton in the stomach. The defendant stated that he was not afraid that the decedent was going to beat him up, and that he had shot the decedent "because of her." (Referring to Thelma Hamilton.) He further stated that he and Thelma had planned to be married as soon as she had been divorced from the decedent, but that the plan had never worked out. During the time the defendant and Thelma were living together, she gave birth and the defendant believed the child to be his own. When he was asked, towards the end of his confession, if he had anything further to say, the defendant replied: "Yes. I guess there is no reason for another person taking another person's life; but I had a baby. I couldn't see our baby any time."

When the defendant took the stand in his own defense at trial he denied having given certain answers present in his confession. He testified that the deceased had dragged him out of the party, and having given his coat and sunglasses to his brother, told the latter, "I'm going to beat this chump's brains out." The decedent then turned to the defendant and stated, "I know that you have a baby by my wife . . . I'm going to fix you tonight for good." According to the defendant, Willie Hamilton then began to drag him down the street, but he jerked his arm loose. He further testified that he knew Willie Hamilton was "much too big" for him. He kept trying to placate the decedent, but to no avail. Finally, after firing a shot in the ground had failed to stop the decedent, the defendant shot the decedent while the latter was lunging at him. The defendant testified that he was

426

afraid for his life, and that he had only meant to wound the decedent. The defendant stated that he believed that the decedent weighed about 215 pounds. However, the pathologist's report introduced in evidence showed that the decedent weighed 180 pounds at the time of his death.

The defendant contends that the foregoing evidence did not establish his guilt beyond a reasonable doubt, especially in view of the evidence introduced by him in self-defense. We find this contention untenable. Under the applicable provision of the Criminal Code (Ill Rev Stats 1961, c 38, § 7–1) the use of force in self-defense which is likely or intended to cause death or great bodily harm is justified only when the person using said force reasonably believes its use is necessary to prevent great bodily harm or imminent death to himself. The defendant relies primarily upon his own testimony at trial. However, the trial judge was not obligated to believe this testimony. The defendant's version of the occurrence, i. e., that the deceased threatened and attacked him prior to the firing of the fatal shot, was directly contradicted by the State's witnesses as well as by his own confession. The trial judge could properly have found from the evidence adduced at trial that the defendant did not shoot the decedent to protect himself, while reasonably believing he was in great danger; but rather that the defendant, carrying a lethal weapon, had intended to "pay back" the decedent for taking away a woman he considered to be his own, and whom he considered to be the mother of his child. In any event, conflicts in the evidence, as well as the credibility of the witnesses and the weight to be accorded their testimony, were issues to be resolved by the trial judge. We cannot say that his determination in this regard was so unsatisfactory or improbable as to justify us in concluding that the defendant was not proven guilty beyond a reasonable doubt. People v. Jordan, 18 Ill2d 489, 165 NE 2d 296.

Defendant next contends that his confession was inadmissible in evidence because he was not advised, prior to giving it, of his privilege against self-incrimination and of his right to consult with an attorney. In support of his contention he cites the decisions of the United States Supreme Court in Miranda v. Arizona, 384 US 436, and in Escobedo v. Illinois, 378 US 478. However, these decisions are not to be applied retroactively. Johnson v. New Jersey, 384 US 719. Because the trial of the instant cause was commenced prior to the rendering of either Escobedo or Miranda neither decision applies here. People v. Jackson, 35 Ill2d 162, 220 NE2d 229. Therefore, the failure of the police or state's attorney to warn the defendant of his right to remain silent and of his right to consult with an attorney at the time the confession was given were only attendant circumstances to be considered by the court in determining whether the statement was voluntarily given, and did not render the confession inadmissible "per se." People v. Kees, 32 Ill2d 299, 205 NE2d 729. The defendant has not introduced any other evidence of coercive circumstances other than those previously referred to. For this reason we conclude that the determination of the trial judge to admit the defendant's confession was neither an abuse of discretion nor a decision against the manifest weight of the evidence, and therefore, we will not overturn his determination. People v. DiGerlando, 30 Ill2d 544, 198 NE2d 503.

Finally, the defendant contends that the ineffective representation given him at trial by his attorney denied him due process of law. Under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution, the defendant in a criminal case is entitled to the effective assistance of counsel. Powell v. Alabama, 287 US 45. However, a conviction will not be reversed for

poor representation unless it appears from the record that the representation was of such a low caliber as to amount to no representation at all, or that it was such that the trial was reduced to a farce. People v. Clark, 9 Ill2d 46, 137 NE2d 54. Furthermore, where a defendant in a criminal case employs counsel of his own choice the failure of counsel to exercise the greatest skill or his commission of some sort of tactical blunder will not merit reversal of the cause. People v. Stephens, 6 Ill2d 257, 128 NE2d 731.

■■ The record shows that defendant was represented by counsel of his own choice. From the remarks of counsel, at trial, it would appear that he had tried many murder cases, over a long period of years. The charges against him here, we feel, after a review of the record, are without merit and require no detailed discussion by us. Suffice it to say that any errors committed by counsel, in his preparation and presentation of the instant case, were not of such a magnitude as to substantially prejudice the defendant's case; nor would the absence of the alleged errors have brought about a different outcome at trial. People v. Laffiton, 62 Ill App2d 440, 211 NE 2d 15.

The judgment of the Criminal Court is therefore affirmed.

Judgment affirmed.

ADESKO and MURPHY, JJ., concur.