**People of the State of Illinois, Plaintiff-Appellee,
v. Louis Townsend, Defendant-Appellant.**

**Gen. No. 54,389.**

First District, Fourth Division.

October 7, 1970.

Julius Lucius Echeles and Jo Anne F. Wolfson, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Anthony Montemurro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

This was a prosecution for murder. Defendant waived trial by jury. He was convicted of voluntary manslaughter and sentenced to serve two to four years. In this appeal the issue is whether the evidence supports the conviction. Resolution of this issue requires a summary of the testimony.

August 16, 1968, at about 6:00 p. m., defendant's brother, Jimmy Townsend, with two women passengers in his car, neared his home. He saw his niece, Charlene, fighting with his daughter, Bettie Jean. Moments later, Charlene had Bettie on the ground. Jimmy tried to pull Charlene away. Mary Townsend, Jimmy's wife, testified that at the time of the quarrel, "a good many people" were nearby. She saw the two women passengers with her husband and saw him go to where the two girls were fighting. Mrs. Townsend testified that when her husband tried to pull Charlene from Bettie, the defendant appeared suddenly; and then her little boy told her, "Mom, look at big brother bleeding (sic)." Defendant had stabbed Jimmy Townsend with a knife, causing a lung and heart wound from which he died a few moments later.

Bettie Jean testified and described her altercation with Charlene. She said her father tried to pull Charlene away; but the defendant came upon them suddenly and stabbed her father. Mrs. Ines Washington and her daughter Joanne witnessed the entire incident. They described the altercation, the attempts of Jimmy Townsend to separate the girls, the sudden attack by defendant and the fatal stabbing. When these four witnesses were asked, they each swore that Jimmy Townsend was unarmed.

Defendant called Charlene and four persons who were present. Each, in varying degrees, described the altercation between Charlene and Bettie Jean; but each testified that when Jimmy Townsend went to pull Charlene from Bettie, he was armed with a straight razor. Defendant testified he saw the girls fighting; he saw his brother Jimmy on top of Charlene; and that he went to Jimmy, "[w]hen I told him to get up off my daughter, he swings at me with the razor. I fell back like that. (Indicating) I fell that way. That's what I done (sic)." Defendant admitted he stabbed Jimmy with his spring knife, but claimed he did it in self-defense.

Defendant was later apprehended in Mississippi, returned to Chicago and charged with murder. The trial judge, after hearing the witnesses, found defendant guilty of voluntary manslaughter. Thereafter, defendant

moved "for judgment of acquittal notwithstanding the verdic (sic)." In support of the motion, he argued that the evidence justified only a conviction for murder or a finding of not guilty; and that the trial judge erred in rejecting the claim of self-defense. The motion was denied. In giving the reasons for his ruling, the trial judge said he did not believe Jimmy Townsend took a swipe at the defendant with a razor. "I believe from the evidence that the man (meaning defendant) was acting under a certain passion, unjustifiably so." In this court, defendant argues that these findings cannot be sustained.

Whether Jimmy Townsend was armed, whether he attacked the defendant with a razor and whether defendant acted in self-defense when he stabbed the deceased, were questions of fact to be decided by the trial judge. People v. Sudduth, 14 Ill2d 605, 153 NE2d 557; People v. Golson, 392 Ill 252, 64 NE2d 462. In deciding these questions, the judge had to resolve the conflict between the testimony of defense witnesses who swore Jimmy Townsend was armed and of prosecution witnesses who said he was not. This conflict was accentuated by a police officer who testified that when he moved Jimmy to the hospital, he did not see a razor near the body. On the other hand, another officer testified that he came to the scene of the killing a half-hour later and found a razor nearby. Although the officer swore there was considerable blood on the razor and the crime laboratory chemical tests yielded positive reactions, the laboratory report stated that the amount of bloodstain was so small that it precluded any serological tests.

Charlene testified that she saw the razor in her uncle's hand and it was "shiny." However, the trial judge found "[t]hat this razor is rusty, is very firm and it takes a substantial amount of pressure to close the blade into the handle." Charlene testified that she was cut three times with the razor. Yet, she made no complaint about her wounds, nor did she seek medical attention until the following day. When she was asked to identify the doctor who treated her, she said the doctor's office was at 621 North Division Street. The

trial judge was quick to observe that Division Street in Chicago was an east-west street. Therefore, the address given did not exist. From these conflicting facts, the State argued that Jimmy Townsend was not armed when defendant fatally stabbed him.

 When as in this case, the evidence is conflicting, it was for the trial judge to resolve the conflict and determine the credibility of the witnesses. People v. Parker, 120 Ill App2d 71, 256 NE2d 67. We will not substitute our judgment as to credibility of witnesses for that of the trial judge unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt. People v. Hoffman, 45 Ill 2d 221, 226, 258 NE2d 326; People v. Hampton, 44 Ill2d 41, 45, 253 NE2d 385. Here, the trial judge believed the State's evidence and rejected the contrary accounts of the occurrence as given by defendant's witnesses. People v. Jordan, 18 Ill2d 489, 165 NE2d 296. We find no reason to disturb the trial judge's apparent conclusion that defendant had no occasion to act in self-defense when he killed his brother. People v. Young, 100 Ill App2d 377, 241 NE2d 507.

 The remaining question is whether the evidence supported the court's finding that defendant was guilty of voluntary manslaughter. Ill Rev Stats 1967, c 38, § 9–2.* From the evidence he heard, the trial judge found that when defendant killed his brother he was provoked into a passion that reduced the killing to voluntary man-

---

* § 9–2. Voluntary Manslaughter

(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) The individual killed, or

(2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

(b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.

slaughter. The evidence, beyond a reasonable doubt, supports the finding and the conviction. People v. Walker, 55 Ill App2d 292, 204 NE2d 594; People v. Cooke, 93 Ill App2d 376, 236 NE2d 97; and see People v. Williams, 95 Ill App2d 421, 237 NE2d 740. The judgment is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.