THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT JOHNSON, Defendant-Appellant.

(No. 11415; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Fourth District—October 8, 1971.

Edward Litak, of Defender Project, of Danville, for appellant.

Everett Laury, State's Attorney, of Danville, for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

A jury found defendant guilty of the murder of one, Petty. Sentence to the penitentiary for a term of 30 to 70 years was imposed. Upon this record we conclude that it was error for the trial court to refuse defendant's tendered instruction defining voluntary manslaughter as in Ill. Rev. Stat. 1969, ch. 38, par. 9—2 (b), and to submit an appropriate verdict form to the jury.

It appears that defendant was a resident of the household of one Arilla Duckworth and contributed to the expense of maintaining it. The latter's daughter, Dorothy Thigpen, stayed at the home from time to time during the week. It appears that Petty had called at the residence where he had laid down with his shoes on the couch and gone to sleep. Dorothy Thigpen testified that at the time of the shooting she was in the living room with the decedent, and that defendant came in and told decedent to get up and go and insisted that he sit up. She testified that Petty stood up, three shots were fired and he was mortally wounded. Defendant then left the house but waited nearby and returned when the police arrived and surrendered the weapon. Sally Mullins testified

for the prosecution that she was in the kitchen at the time of the shooting, that she heard defendant ask Petty to leave and Petty said he wasn't going, and then she heard three shots. She also testified that defendant was not under the influence of liquor.

Defendant testified that he twice shook Petty who jumped up; that Petty looked funny out of his eyes and that there was something wrong with him. He compared it with the look of one who used drugs. He testified that he knew decedent carried a knife and that he, the defendant, was afraid of Petty because the latter had broken a woman's leg with a piece of iron pipe. He testified that Petty started towards him saying, "I'll take that away from you and beat your brains out"; that he, the defendant, had backed up across the room and fired three times when he didn't have a chance to run. Defendant explained his carrying the gun by saying that he had been threatened by a gang or group of boys who carried knives.

Defendant testified that there had been no arguments with the decedent, and that he got the gun out when Petty said that he would beat defendant's brains out.

The record shows that the decedent was a man 30 years of age and described him as very muscular. Defendant's description of the size and weight of Petty seems to be somewhat exaggerated. Defendant himself was a man aged 56 years and of ordinary strength.

Upon these facts, the defendant tendered and the court gave an instruction on use of force in defense of the person in the language of IPI-Criminal, par. 24.06. The court refused, however, to give defendant's tendered Instruction No. 3 in the language of IPI-Criminal, par. 7.05:

> "A person commits the crime of voluntary manslaughter who intentionally or knowingly kills another if, at the time of the killing, he believes that circumstances exist which would justify the killing, but his belief that such circumstances exist is unreasonable."

Such instruction would define for the jury the offense of voluntary manslaughter as in Ill. Rev. Stat. 1969, ch. 38, par. 9—2 (b). The court also refused to give defendant's tendered instruction in the language of IPI-Criminal, par. 7.06, stating the issues in the offense of voluntary manslaughter.

It is the accepted rule that if there is evidence in the record which, if believed by the jury, would reduce the offense to manslaughter, an instruction defining the offense should be given. (*People v. Latimer,* 35 Ill.2d 178, 220 N.E.2d 314 and *People v. Harris,* 8 Ill.2d 431, 134 N.E.2d 315.) In *People v. Guthrie,* 123 Ill.App.2d 407, 258 N.E.2d 802, this division held it to be reversible error to refuse to give defendant's instruction defining involuntary manslaughter upon the State's Attorney's

objection that the offense was murder or nothing. There, as here, the testimony of defendant was the only evidence supporting the possibility of manslaughter. See also *People v. Williams,* 95 Ill.App.2d 421, 237 N.E.2d 740.

In giving defendant's instruction on the justifiable use of force, the trial court here determined, as a matter of law, that there was sufficient evidence on that issue for the consideration of the jury. When the trial court determined that the facts in evidence justify or require the giving of an instruction on the justifiable use of force, there are, in fact, three alternatives for the consideration of the jury, *i.e.,* (1) murder, (2) that the use of force was justified and self defense was demonstrated, or (3) that while the defendant might have believed that the use of force was necessary under the evidence, such belief was unreasonable.

Here, the given and refused instructions required the jury to determine that there was either murder or justified self defense, and they were, in fact, barred from consideration of the statutory offense which results when force is used unreasonably as defined in Ill. Rev. Stat. 1969, ch. 38, par. 9—2 (b).

It was the rationate of *Guthrie* that it was for the jury to make a choice of the several offenses which the evidence may disclose.

The judgment below is reversed and the cause is remanded for a new trial.

Reversed and remanded.

CRAVEN, J., concurs.

Mr. Presiding JUSTICE SMITH, dissenting:

Guthrie, in my opinion, stands for the very reasonable proposition that if there is sufficient evidence to support a jury verdict either of murder or manslaughter the jury should be instructed as to both. I do not question the statement that the testimony of a defendant standing alone may be "sufficient evidence", but I think it is incorrect to cite Guthrie as authority, because as I read that case, there was other supporting evidence.

Be that as it may, I do not believe that a finding that there are facts sufficient to require the giving of an instruction on justifiable use of force, *ipso facto,* requires the giving of an instruction on voluntary manslaughter—the so-called third alternative. To me, the idea or concept of self-defense does not axiomatically include the idea or concept of voluntary manslaughter. This is not to say that they are mutually exclusive, only that facts which support one may not support the other. The majority would have us believe that in every case where IPI-Criminal,

¶24.06, is given (self-defense) then IPI-Criminal, ¶'s 7.03 *et seq.* (voluntary manslaughter) must be given. In other words, a determination as to one question of law mandates the giving of two conceptually different instructions. I think there are two questions of law involved, that is, are there sufficient facts to support one (self-defense) and are there, again, sufficient facts, to support the other (manslaughter)?

Of course, the same facts could put both concepts in issue. But there are still two questions of law that must be answered, not one. But as I have said, I think it is also true that we could be presented with a factual context which would rule out manslaughter, but support an instruction on self-defense and vice versa.

Here, I believe the tendered instructions were properly refused for the reason that there was not sufficient evidence to raise the issue of manslaughter. And, as I have said, I do not believe that a determination of the propriety of giving an instruction on self-defense mandates the giving of the tendered instructions on manslaughter. In this, I think, I am buttressed by the Committee Comment to IPI-Criminal, 7.05, Voluntary Manslaughter:

> "When the charge is murder, the defense is self-defense, and the proof supports a voluntary manslaughter instruction and verdict, the order of instructions should be: * * * ."

To me this is an implied direction that a voluntary manslaughter instruction should not be given if the proof doesn't support it. Indeed, the Committee's Comment to IPI-Criminal, sec. 24.06 (self-defense) says nothing to the effect that in giving this instruction, a manslaughter instruction must also be given. If the majority is right, then surely a comment here would be very much in order as one of the prime purposes of pattern instructions is to relate one instruction with another if such is in fact the case. To me such silence is instructive.

I assume, because defendant did in fact tender manslaughter instructions, that if defendant had not done so, the majority would not reverse. But they do not say so, and the statement that a determination of the propriety of an instruction on justifiable use of force presents "three alternatives for the consideration of the jury", one being "that while the defendant might have believed that the use of force was necessary under the evidence, such belief was unreasonable", leaves one wondering. If they do mean to say that the issue of manslaughter is raised by the giving of an instruction on self-defense, regardless of whether a manslaughter instruction is requested by the defense, trial courts in the future are left in an untenable position. Let us assume that there is sufficient evidence to justify a tendered instruction by the defense on justifiable use of force, but no tender of an instruction on voluntary

manslaughter, and therefore none is given. If a conviction for murder does result, can it be argued on appeal that it was error for the court not to have given on its own an instruction on this issue? Seemingly, under the majority's holding, such is now possible, but I do not believe that this should be so.

For these reasons, I dissent.