THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ISADORE GALARZA, Defendant-Appellant.

(No. 55632; )

First District—February 8, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Saul H. Brauner and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael R. Epton, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant was charged with murder for the fatal shooting of one Dimas Roldan, also known as Carmello Baretto, on February 5, 1970. Defendant did not deny shooting Roldan, but claimed that he acted in self-defense. After a bench trial he was found guilty of voluntary manslaughter and sentenced to a term of two to six years. On appeal he contends that the State failed to prove beyond a reasonable doubt that he was not acting in self-defense. This contention requires a review of the evidence.

The prosecution's case consisted primarily of the testimony of four police officers. Patrolman Nicholas Augoustatos testified that at 2:00 P.M., February 5, 1970, he responded to a radio dispatch regarding a shooting at 2256 West Division Street, Chicago. Upon arriving at the scene, he observed Dimas Roldan lying in a gangway and bleeding from the head and neck. A cursory examination of Roldan's person and the immediate vicinity uncovered no weapons or other physical evidence. After approximately five minutes Patrolman Augoustatos left the scene in order to investigate another shooting, this one at 1226 North Leavitt. At an apartment at that address Patrolman Augoustatos and his partner were met by defendant, who volunteered the statement, "I just shot someone." He surrendered a gun, a .25 caliber Galesi automatic, and accompanied the police to the scene of the shooting, and then to the hospital. In transit defendant told police that he was forced to shoot Roldan because of the latter's threatening conduct. In the emergency room of the hospital defendant was identified by his victim and again admitted responsibility for the shooting.

Patrolman Augoustatos' partner on February 5, Officer Timothy Brophy, testified to observing a trail of blood from the spot where Roldan lay in the gangway to the alley north of and parallel to Division Street. The trail ran north in the gangway to the alley and west in the alley for several yards. Officer Brophy also testified that in the course of defendant's periodic admissions, he told police that Roldan had broken into defendant's apartment the previous night. The remainder of Officer Brophy's testimony generally corroborated that of his partner. Officer John Minich of the crime laboratory testified to recovering a spent .25 caliber cartridge case in the gangway, approximately 15 feet north of the location of Roldan's body and 15 feet south of the alley. It was later stipulated that the cartridge case was ejected from the gun surrendered by defendant. Detective Lee Anderson also testified for the State. He identified the weapon taken from defendant as a .25 caliber semi-automatic weapon, requiring a separate squeeze to fire each round. He

expressed the opinion that a spent cartridge would be ejected approximately 10 to 20 feet to the right of that weapon. He testified at length on both direct and cross-examination regarding his interrogation of defendant on February 5. Defendant admitted to Detective Anderson that he had obtained the gun on February 4 from a friend who was leaving for New Jersey. He also told Detective Anderson that Roldan broke into defendant's apartment at 2057 North Kedzie the previous night and assaulted Carmen Baretto. It was established that Mrs. Baretto lived with defendant in a common law relationship and had previously lived similarly with Dimas Roldan. Defendant stated that he phoned the police, who responded shortly to arrest Roldan. This version of the events of February 4 was corroborated at the 13th District Station by Carmen Baretto.

In his testimony, Detective Anderson also incorporated defendant's statement of the chain of events immediately preceding the February 5 shooting. Defendant said that he first encountered Roldan at 2:00 P.M., February 5, on the corner of Leavitt and Division. Roldan emerged from an automobile while another man remained inside, and approached defendant on the corner. Roldan, who had his hand in his pocket, refused to halt his advance despite defendant's warnings. Defendant pulled a gun from his right pocket, fired once and ran into the alley. Roldan pursued. Defendant fired twice more. Roldan then ran into the gangway, followed by defendant who fired a fourth shot. According to Detective Anderson, defendant at no time suggested to him that Roldan displayed a weapon or that he struck defendant. Following this testimony the parties stipulated the admission of the autopsy report for Dimas Roldan. The report described the points of entry of five bullets. Two entered the side of Roldan's head, one entered the side of his neck, and two entered his back. Upon the admission of this evidence and certain other stipulations the prosecution rested its case.

Defendant took the stand in his own behalf and testified as follows. On February 4, 1970, at approximately 10:30 P.M., Dimas Roldan kicked in the door of the apartment occupied by defendant, Carmen Baretto and her two children. Mrs. Baretto had previously separated from Roldan because of the incessant beatings which he administered. Roldan struck and kicked defendant several times and chased him down the stairs of the building. Defendant fell into a second floor apartment, then proceeded to the first floor apartment of the landlady, who called the police. When the police arrived, they were led by defendant to his apartment, a complaint was signed and Roldan was arrested. As he was transported from the scene, he threatened to kill defendant. Because of that threat, defendant and Carmen Baretto immediately packed their belongings and

moved to defendant's cousin's house at 1226 North Leavitt. The next morning defendant learned that Roldan had been released on bond. At 8:00 A.M., defendant accepted a gun which was offered to him on the street by a friend for safekeeping. This friend told him he was going to New Jersey and could not carry a firearm on the airplane. At approximately 2:00 P.M., defendant left his new residence in search of a furnished apartment. At the intersection of Leavitt and Division he encountered Roldan and another man, both of whom emerged from a car and advanced towards defendant. Roldan cursed and threatened defendant and, when defendant retreated, chased him into the alley north of and parallel to Division. Roldan approached to within seven feet. He threatened defendant and kept his hands in his pockets. Roldan soon had him backed against a wall. His friend stood approximately 15 feet distant. As Roldan indicated he was about to pull something from his pocket, defendant pulled out his gun, the presence of which he suddenly recalled, closed his eyes and fired. He then ran to his cousin's house on Leavitt Street to call the police. He denied ever stating to police that he had pursued his victim into the gangway.

Two other witnesses testified on behalf of defendant. His landlady from 2057 North Kedzie, and another resident from that address corroborated defendant's testimony regarding Roldan's February 4 assault. The only other evidence was a stipulation by the parties that police records reflected the landlady's report of a disturbance at her house on the night of February 4 and her request for police assistance.

OPINION

Defendant was found guilty of voluntary manslaughter pursuant to Ill. Rev. Stat. 1969, ch. 38, par. 9—2(b):

"A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

Article 7 of the Criminal Code * provides in pertinent part:

"Use of Force in Defense of Person." A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is

---

* Ill. Rev. Stat. 1969, ch. 38, par. 7—1.

necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

Defendant's contention on appeal posits the issue of whether the prosecution proved beyond a reasonable doubt that defendant's expressed belief that the amount of force he used was necessary to prevent imminent death or great bodily harm to himself was in fact an unreasonable belief.

The evidence convincingly established that Dimas Roldan, known to defendant as a violent man, assaulted defendant and Carmen Baretto on February 4. Assuming the veracity of defendant's testimony, Dimas Roldan again assaulted and threatened to kill defendant on February 5. However, on neither occasion did Roldan brandish a weapon; nor was a weapon recovered from his person, from his car or from the vicinity of the shooting. Defendant did not contest the accuracy of the coroner's physician's report which established that deceased was struck by five bullets, none of which entered the front portion of his body. In sum, defendant fired a semi-automatic weapon five separate times into various portions of Roldan's body to prevent a weaponless assault.

■■ In the absence of other evidence tending to establish the severity and certainty of the feared injury to defendant, we believe the evidence adduced was sufficient to justify the court's conclusion that the degree of force used was unnecessary under the circumstances and that a contrary belief would have been unreasonable. (*People v. Lockett*, 85 Ill.App.2d 410; *People v. Harris*, 124 Ill.App.2d 234.) We further note that competent evidence was introduced tending to prove that defendant pursued his victim into a gangway where he fired another round. Defendant's contrary testimony raised a credibility issue properly determinable by the trier of fact. (*People v. Williams*, 95 Ill.App.2d 421.) If the trial judge concluded that the "hunted had become hunter" the finding of guilty of voluntary manslaughter would have been justified, regardless of the trial judge's or this court's estimation of the propriety of defendant's initial resistance. (*People v. Knox*, 116 Ill.App.2d 427.) We hold that defendant was proven guilty beyond a reasonable doubt, and affirm the judgment.

Judgment affirmed.

LEIGHTON and SCHWARTZ, JJ., concur.