THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT KENDRICKS, Defendant-Appellant.

(No. 55822;

First District—April 13, 1972.

1030

Lawrence Stephen Galka, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Stephen Connolly, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with murder and aggravated battery. The trial court, sitting without a jury, found him guilty of both charges. Defendant was sentenced to 18 to 40 years for murder and 8 to 10 years for aggravated battery, the sentences to run concurrently. On appeal, defendant urges that the evidence produced at trial was insufficient to sustain the convictions for the crimes; that, with respect to the murder charge, defendant's right to due process was violated; and that the sentence imposed on the murder charge was excessive.

Certain facts are undisputed. On February 24, 1968, defendant fired the shot that fatally injured the deceased, Marie Richardson, and wounded deceased's brother, Lonnie Richardson. Defendant, 22 years

of age at the time, and deceased, 33 years old, had lived together for a few years, although they were not living together at the time of the occurrence. Earlier in the evening, deceased had gone to defendant's place of work, a gas station, and after an argument, had placed a gun to defendant's head. Defendant called the police but, before their arrival, one of deceased's sons ran away with the gun. After finding no weapons on the deceased, the police merely took her home in a squad car. At about 4:00 A.M., defendant went to the deceased's apartment.

Joseph Richardson, a son of the deceased, testified that when defendant knocked on the door, Lonnie Richardson, the uncle of the witness, answered. The witness stood beside Lonnie in the doorway. Defendant asked to see the deceased, but Lonnie stated that she was sleeping. The witness unsuccessfully attempted to awaken his mother. The next thing he knew, a shot had been fired and his uncle fell to the ground. Defendant then entered the room where deceased was sleeping, walked up to her and shot her in the head. Deceased's younger son Melvin testified substantially to the same facts as his brother concerning the shootings. It was he who took the gun from his mother earlier in the evening. Melvin also testified that he had seen defendant's car driving around the house prior to the shootings.

Lonnie Richardson, the other victim, also testified on behalf of the State. Lonnie opened the door when defendant knocked and told defendant that he could not see Marie because she was sleeping. The witness turned to see if his sister was still sleeping, and when he turned back toward the defendant, was shot in the face. Lonnie was hospitalized for two weeks and had a steel plate in his head as a result. All three occurrence witnesses testified that the deceased did not have a gun and that there was no gun in the apartment.

Several police officers also testified for the State. Defendant was arrested in a vacant lot near the premises, and the gun was found the next afternoon in the yard behind defendant's apartment. Defendant told the police that he shot Marie because she was harassing him and had threatened him with a gun, and that he shot Lonnie because he would not let defendant in the apartment. The police found no gun near either victim although they did not search the premises thoroughly. One of the officers testified that defendant had made several complaints against the deceased.

Earl Payton, a friend and co-worker of defendant, testified for the defense. Defendant lived in Payton's house. Payton was present when deceased threatened defendant with a gun earlier in the evening. Defendant left work because he was upset. Defendant came in the next morn-

ing to tell Payton that he had shot Marie and her brother. At trial, Payton recognized the gun used as one kept in the gas station.

Defendant testified that he had been trying to break off the relationship with deceased for some time. Defendant testified about the incident at the gas station and also told of other incidents when the deceased had threatened him. He testified that the deceased came to his apartment at 3:30 A.M., saying that she wanted to talk to him, but he was frightened because she had a gun. Defendant then went to her apartment to talk, but Lonnie would not let him in the apartment. Lonnie made a sudden move and turned back quickly. Although defendant did not see anything in Lonnie's hand, he shot him because he thought Lonnie might have been handed a gun. Defendant testified that, as he entered the room, the deceased was sitting up on the couch pointing a gun at him. Defendant shot her because he was afraid that she would shoot first. Defendant denied making any statements to the police.

■■■ Defendant first contends that the proof was insufficient to sustain the convictions. He maintains that all his actions were justified in the defense of his person. The issue of self-defense is always a question of fact and a judgment will not be disturbed "unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt." (*People v. Williams*, 40 Ill.2d 522, 526, 240 N.E.2d 645.) The trier of fact is not required to accept defendant's account of the events, but may consider all of the surrounding circumstances and the improbabilities of the matters testified to by defendant. (*People v. Watts*, 101 Ill.App.2d 36, 241 N.E.2d 463; *People v. Williams*, 95 Ill.App.2d 421, 237 N.E.2d 740.) In finding defendant guilty of both crimes, the trial judge specifically stated that defendant's testimony that he acted in self-defense was not credible. We believe that such a determination was reasonable and proper.

■■ As to the aggravated battery charge, defendant's argument that he acted in self-defense in shooting Lonnie is based solely on his own testimony. Three witnesses testified that Lonnie had no weapon of any kind, and that there was no gun on the premises. Indeed, defendant admitted that he saw nothing in Lonnie's hand, but predicated his theory of self-defense on the possibility that one of deceased's sons could have slipped a gun to Lonnie. Evidence was also adduced, contrary to defendant's self-defense claim, that defendant had stated that he shot Lonnie because he would not let defendant in the apartment. The evidence was sufficient to support the conviction for aggravated battery.

■■ As to the murder charge, the trier of fact was aware that the deceased had threatened defendant's life several times in the past. How-

ever, the court also knew that defendant went to deceased's apartment, armed with a gun, to settle their dispute. Defendant's deliberate return to the conflict with the deceased is inconsistent with a claim of self-defense. (*People v. Lewis*, 32 Ill.2d 391, 207 N.E.2d 65.) Moreover, the trial court believed the testimony of two occurrence witnesses that defendant deliberately killed deceased while she slept. It is the province of the trier of fact to settle conflicts in evidence and to determine from the facts and circumstances whether defendant acted in self-defense or, if not, whether the circumstances attending the assault were such that the death at defendant's hands constituted murder, manslaughter or justifiable homicide. (*People v. Brumbeloe*, 97 Ill.App.2d 370, 240 N.E.2d 150.) In the instant case, the trial court properly found defendant guilty of murder.

Defendant next contends that as to the charge of murder his right to due process of law was violated by the trial court. In rendering judgment, the judge stated that he was not impressed with defense counsel's argument that defendant could be convicted only of voluntary manslaughter. The judge went on to state that voluntary manslaughter was inconsistent and incompatible with the theory of self-defense. Defendant maintains that the comments of the judge show that he did not consider the possibility of finding defendant guilty of voluntary manslaughter.

■■ The theory of self-defense is compatible and consistent with the crime of voluntary manslaughter, (*People v. Gajda*, 87 Ill.App.2d 316, 232 N.E.2d 49), and the trial court's statement to the contrary was erroneous. However, the statement was not prejudicial and did not deprive defendant of due process because the trial court specifically found that defendant's evidence as to self-defense was not credible. The evidence as presented and believed by the court showed that defendant was guilty of murder in that he deliberately shot the deceased with full intent to take her life. Defendant was not deprived of due process by the comments of the trial judge.

■■ Defendant also contends that the sentence of 18 to 40 years imposed on the murder charge was excessive. The minimum sentence for murder is 14 years. (Ill. Rev. Stat. 1967, ch. 38, par. 9—1.) The power of a reviewing court to reduce sentences should be exercised with caution. A sentence imposed by the trial judge who sees the defendant and is, therefore, in a far better position to appraise him and to evaluate the likelihood of his rehabilitation than a reviewing court, should not be reduced unless there are substantial reasons for doing so. (*People v. Valentine*, 60 Ill.App.2d 339, 208 N.E.2d 595.) In the instant case, defendant was found guilty of the brutal murder of a sleeping woman.

1034

Despite defendant's youth, his lack of prior felony record, and previous harassment by the victim, we believe that the facts and circumstances of the crime justify the sentence imposed.

Judgments affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.