THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTER PICKETT, Defendant-Appellant.

First District (1st Division) No. 61962

Opinion filed February 2, 1976.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Kevin Sweeney, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Walter Pickett, the defendant, was indicted for the murder of Henry McNeil, found guilty by a jury of voluntary manslaughter and sentenced to a term of not less than 5 nor more than 15 years.

The defendant's testimony established that prior to the homicide he was provoked by the following acts of the deceased. On February 16, 1973, he had a beer at a bar in Chicago and as he was leaving the deceased approached him, gave him a gang signal and said, "the nation runs it." The deceased then grabbed a dollar bill defendant was holding in his hand and when the deceased would not return the money, the defendant snatched it back. As the deceased started to take off his coat, the defendant hit him. Two men grabbed the defendant and told him to leave. Four days later as defendant was walking down a street in the late evening he encountered the deceased who apologized for the previous incident, shook defendant's hand and then cut the defendant's throat with either a knife or a razor. The cut required 23 stitches. On the same night after receiving medical treatment, the defendant purchased a .22-caliber pistol for $15 from a man he knew by sight and happened to meet on the street. Defendant had not previously owned a gun. This testimony is not disputed.

The defendant also testified that the next day he was carrying the gun and trying to find a fellow worker to get a ride to work. He saw his

friend's car parked at 48th and Prairie and looked for him in a tavern at 48th and Indiana. Not finding him there, the defendant went to a nearby pool hall to look for him. When he entered the poolroom he saw the deceased sitting on a stool.

The testimony of three eyewitnesses established that the defendant started to shoot at the deceased immediately after opening the poolroom door, that the deceased was shot as he turned toward the door when it opened, that the deceased was sitting on a stool when the defendant fired the first shot, and that after the first shot the deceased got up from the stool and ran towards the back of the poolroom and into a washroom while the defendant fired a gun at deceased's back. The defendant ran out of the poolroom, the deceased staggered out of the washroom, collapsed and died. The autopsy revealed a bullet wound in deceased's face, one in the chest and three in the back. When the police arrived at the poolroom, the body of the deceased was on the floor, but they found no weapons.

The defendant surrendered to a police officer shortly after the shooting. A police investigator testified that the defendant told him what had happened, stating that as he entered the poolroom, the deceased made a pocket play. The officer explained that a "pocket play" is a movement of the hand toward the pocket as if there was a weapon in the pocket. The defendant testified that as he entered the poolroom the deceased spun around, jumped off a stool, went in his coat and pulled out a gun. It was at that point, according to the defendant's testimony, that he pulled his gun and started shooting. The defendant testified that he told the investigating officer that the deceased had a gun in his hand, but the officer denied that defendant told him this.

An assistant State's attorney who interviewed the defendant testified that the defendant gave a voluntary oral statement in which he said he went into the poolroom, saw the deceased there, shot him once in the front and continued to fire the weapon while the deceased was running. The assistant State's attorney did not ask and the defendant did not mention a "pocket play" by the deceased or that deceased had a gun. The defendant agreed he did not tell the assistant State's attorney that the deceased made a pocket play or pulled a gun.

■■ The first question is whether the defendant acted in self-defense. The State's three eyewitnesses did not see the deceased reach toward his pocket, let alone pull a gun. The defendant argues that because of their position in the poolroom at the time of the shooting they did not have the opportunity to see what the deceased was doing. He also contends that their testimony is inconsistent and not credible, and that one of the eyewitnesses was not even in the poolroom at the time of the

shooting. However, the resolution of conflicts between the testimony of the eyewitnesses and the defendant was for the jury to decide. (*People v. Holtz* (1974), 19 Ill. App. 3d 781, 790, 313 N.E.2d 234; *People v. Kendricks* (1972), 4 Ill. App. 3d 1029, 283 N.E.2d 273.) While the defendant's version of the shooting contradicts that of the eyewitnesses, the contradiction does not render the State's evidence insufficient to prove beyond a reasonable doubt that the defendant was not acting in self-defense. (*People v. Brown* (1972), 52 Ill. 2d 94, 106, 285 N.E.2d 1; *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 333 N.E.2d 8.) The evidence is not so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt regarding whether the defendant was acting in self-defense, and this court cannot, therefore, substitute its judgment for that of the jury in deciding the credibility of witnesses or the weight to be given their testimony. *People v. Schwartz* (1974), 58 Ill. 2d 274, 278, 319 N.E.2d 23; *People v. Clay* (1973), 55 Ill. 2d 501, 507, 304 N.E.2d 280; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Catlett* (1971), 48 Ill. 2d 56, 64, 268 N.E.2d 378; *People v. Kendricks* (1972), 4 Ill. App. 3d 1029, 283 N.E.2d 273.

■■ The essential difference between a justified killing in self-defense and one not justified amounting to voluntary manslaughter is whether the belief that it was necessary to use deadly force was reasonable under the circumstances. (*People v. Joyner* (1972), 50 Ill. 2d 302, 306, 278 N.E.2d 756.) While the defendant may have feared the deceased might injure him, his use of deadly force was not justified unless under the circumstances it was reasonable for him to believe that he was in danger of death or great bodily harm. (Ill. Rev. Stat. 1971, ch. 38, §§7—1, 9—2(b); *People v. Brown* (1946), 392 Ill. 519, 64 N.E.2d 739; *People v. Young* (1973), 11 Ill. App. 3d 609, 297 N.E.2d 298; *People v. Martinez* (1972), 4 Ill. App. 3d 1072, 283 N.E.2d 268; *People v. Galarza* (1972), 3 Ill. App. 3d 853, 279 N.E.2d 372.) Where, as here, a defendant is not found guilty of murder, the circumstances that might have been considered to show premeditation or malice need not be disregarded in determining the reasonableness of his belief that he had to use deadly force. *People v. Schwartz* (1974), 58 Ill. 2d 274, 277, 319 N.E.2d 23.

■■ Defendant Pickett was still in the doorway of the poolroom when he claimed the deceased made his pocket play or pulled his gun, and he could have retreated out the door. The defendant continued to shoot while the deceased was running away from him. The investigating officer testified that defendant never told him that the deceased had a gun in his hand. Defendant's suggestion that the deceased had a gun which was disposed of by his friends before the police reached the poolroom was apparently rejected by the jury. The jury could also have rejected

defendant's explanation as to why he entered the poolroom carrying the gun he purchased the previous night. The testimony of the eyewitnesses showed the defendant to be the aggressor. Thus, the evidence, if believed by the jury, was sufficient to establish defendant's guilt of voluntary manslaughter beyond a reasonable doubt, and as in the case of the issue of self-defense, the credibility of the witnesses was for the jury to decide. *People v. Schwartz* (1974), 58 Ill. 2d 274, 278, 319 N.E. 2d 23.

The defendant also contends that he is entitled to a new trial because of several errors which occurred during his trial. In response to a discovery request by defendant for any statements he has made, the State referred to the police report. In his opening statement, the assistant State's attorney told the jury the defendant had said to the police, "I walked the streets looking for him. I bought a gun." When the defendant objected that the prosecutor had not disclosed the statement in the response to his discovery motion, the State pointed out it was based on testimony of a police officer at the coroner's inquest. The State then amended its discovery answer by adding the words "and inquest testimony" after the reference to the police report. The defendant presented a motion *in limine* to exclude reference to any testimony at the inquest which did not appear in the police report. The motion *in limine* was made on the second day of the trial. The only witnesses to testify had been two police officers and neither of them had referred to the statement in controversy. No more testimony was heard until the eighth day of the trial, and thus the defendant had ample time to prepare for the testimony in question.

■■■ Under these circumstances, the denial of the motion *in limine* was not error. *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, is not applicable because the testimony in question was unfavorable rather than favorable to the defendant. Supreme Court Rule 415 (g) gives the trial court broad discretion in dealing with a claim that a party has failed to comply with a discovery order. There is no mandate that a court respond to failure to disclose evidence during discovery by excluding it. As alternatives, the court can order disclosure of these matters, or grant a continuance. The defendant here in effect received the benefit of both of these alternatives. It does not appear that he was prejudiced by the State's failure to refer to the inquest testimony in its original answer to his discovery motion particularly because no testimony was actually offered by the State with respect to the subject matter of the statement testified to at the inquest.

■■ Next, the defendant objects to the prosecutor's use of the words "confession" or "admission" in referring to the defendant's statements to

police officers. When these words were used by the prosecutor in his closing argument, objections were sustained and the jury was instructed to disregard the prosecutor's comments. The error is, therefore, deemed cured. (*People v. Carroll* (1973), 12 Ill. App. 3d 869, 878, 299 N.E.2d 134.) When "confession" was mentioned in the opening statement, the judge pointed out that this was only what the State hoped to prove. The error, if any, was harmless.

■■ Defendant, relying on *People v. Gates* (1973), 14 Ill. App. 3d 367, 302 N.E.2d 470 (abstract opinion), also contends that it was error for the State to urge in closing argument that defendant's first statement that the deceased drew a gun was not until trial. In *Gates*, the defendant refused to make any statement to the police. The defendant in this case chose to give the police his version of the shooting. In *Gates*, the prosecutor implied that if the defendant had been acting in self-defense he would have told the police of that defense instead of remaining silent. The defendant in this case told the police from the beginning he was acting in self-defense. The prosecutor, in commenting about a crucial detail which the defendant testified to at the trial but failed to disclose during police interrogation, did not penalize the defendant for exercising any fifth amendment rights. Finally, in *Gates*, the defendant objected to the questions, while here no objections were offered to either the questions or the prosecutor's arguments on this aspect of the case. Any improprieties were, therefore, waived.

■■ The prosecutor's closing argument has been carefully reviewed by this court. Although hard-hitting and vigorous, it did not exceed the bounds of legitimate argument, and no objection was even made during the trial to the portion about which the defendant makes his principal complaint on appeal. It was not nearly as offensive as the closing argument which did not justify reversal in *People v. Terrell* (1975), 62 Ill. 2d 60, 64, 338 N.E.2d 383. The defendant was not prejudiced by the prosecutor's statements to the jury.

■■ Defendant's argument that the State's examination of witnesses prejudiced him is equally without merit. The fact that objections were sustained to improper questions is not a ground for reversal unless the effect of the questions was prejudicial; the questions did not have such an effect. The defendant claims he was denied a fair trial because the prosecutor persisted in propounding questions calling for hearsay answers. At one point the prosecutor asked a police officer what an eyewitness told him about the deceased having a gun or making an aggressive move towards the defendant. The question was withdrawn after defense counsel objected. A few questions later the prosecutor asked the officer what the eyewitness said about the location of the deceased when

the defendant arrived in the poolroom. The defendant was not prejudiced because an objection to the second question was sustained, and neither question was answered. Other questions put by the prosecutor in the heat of cross-examination were objected to and the objections were sustained. The defendant was not prejudiced by the fact that these questions were propounded. Whatever cumulative effect the questions and argument to which objections were sustained may have had did not deprive the defendant of a fair trial; if there was any overreaching by the prosecutor, it was harmless. *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.

■■ An alternate juror was used on the last day of the proceedings although the original record on appeal contains no reference to the substitution. Defendant argues this is a ground for reversal. However, the record has been corrected by an order entered by the trial judge after this issue was raised by the defendant on appeal, and after a hearing before the trial judge on the State's motion. The defendant was represented at this hearing. The sworn testimony of the State established that on the last day of the trial a juror called to say he would be unable to attend. Though counsel for the parties agreed in chambers that an alternate juror would be substituted for the missing juror, this agreement was not placed upon the record. The trial judge expressed for the record his independent recollection that the missing juror was prevented from attending the last day of the trial because of a severe storm, and the alternate replaced him. The public defender who represented the defendant at the trial stated he had no recollection of what occurred. The substitution of the juror was proper under section 115—4(g) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, §115—4(g), and Supreme Court Rule 329 authorized correction of the record to suppy a material omission. The defendant does not dispute the accuracy of the facts set forth in the circuit court's order correcting the record; his trial counsel simply takes the position that he has no present independent recollection. Under these circumstances, the defendant suffered no prejudice by reason of either the substitution or the correction of the record to reflect it.

The defendant urges that the circumstances of this case warranted his being placed on probation. The decision to which this court must direct its attention on the issue of probation is *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 301 N.E.2d 300. We conclude that the trial judge neither acted arbitrarily nor abused his discretion in denying probation, and this court is, therefore, unable to grant it.

■■ The defendant also requests that consideration be given to a reduction of his sentence. Though his conduct is not condoned by this

court, it is mitigated by the hostile acts of the deceased toward the defendant shortly prior to his death. There is no question that the defendant was provoked by the behavior of the deceased in their two encounters shortly before the shooting, and that the deceased bullied and assaulted the defendant, seriously injuring him when they encountered each other the day before the shooting. The defendant had no criminal record, was steadily employed, and supported and took good care of his wife and his retarded stepchild. The defendant is not likely to encounter again the type of experience which led him to his present difficulties, and if he should, hopefully the deprivation of freedom he has already suffered has taught him to react differently. A sentence as long as the one defendant received is not necessary to protect society from him. On the other hand, the defendant's sentence should be substantial enough so as not to deprecate the seriousness of his offense. Accordingly, under the authority of Supreme Court Rule 615(b)(4), sentence is reduced to a term of from 3 to 9 years and the judgment is modified to a sentence of 3 to 9 years in the penitentiary. As thus modified, the judgment is affirmed.

Judgment affirmed as modified.

GOLDBERG, P. J., and BURKE, J., concur.