(No. 33733.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROCCO MAURANTONIO, Plaintiff in Error.

*Opinion filed January 19, 1956—Rehearing denied March 19, 1956.*

FRANK A. MCDONNELL, of Chicago, (LOUIS A. ROSEN-THAL, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, EDWIN A. STRUGALA, IRWIN D. BLOCH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and FRANCIS X. RILEY, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case comes to us by writ of error to the criminal court of Cook County. Rocco Maurantonio, defendant, was indicted on December 4, 1953, for the murder of one Francisco Campanelli. He was tried by a jury, found guilty of murder, and sentenced to 18 years in the State penitentiary.

It is conceded that the defendant shot and killed Campanelli, but defendant contends here, as in the trial court, that in the heat of a fight, believing himself to be endangered of life and limb, he shot the deceased in defense of his father and in self-defense. The occurrence witnesses were all of Italian descent, and some spoke broken English. An interpreter was used for part of the testimony.

From the evidence it is undisputed that defendant and deceased had a fight; that deceased was running away to a car; that defendant shot three times with a 45-calibre

pistol, the last two shots being from a distance of 35 feet and hitting deceased in the back of the head and causing his death.

The evidence of other facts surrounding the shooting is in dispute. One De Bellis owned a fish store adjacent to a liquor store owned by the father of the defendant. De Bellis testified that the defendant met the deceased in the fish store about 6:30 P.M. on November 12, 1953. He stated that they started to fight over an argument concerning water in the basement of the liquor store and remarks deceased had allegedly made to the father of defendant. De Bellis, one La Bellarte, and deceased were associated in a plumbing business. De Bellis further testified that he broke up the fight and told deceased to leave. He then saw defendant coming from his father's liquor store with a gun. He grabbed his arm; the first shot went into the sidewalk, while the others hit deceased as he was entering La Bellarte's car about 35 feet away.

La Bellarte, a friend of deceased, testified to substantially the same facts as De Bellis. There was also testimony that defendant admitted that he shot deceased as he was running away from him.

The father of defendant testified that the fight was started by deceased in the liquor store; that only La Bellarte, the defendant, the witness and the deceased were present; that the deceased called the witness names, started to fight with defendant, and then went away with La Bellarte; that the deceased then came back alone, grabbed a beer bottle, threatened to kill defendant, and reached over the counter and hit defendant in the mouth with the bottle; that the defendant then got the gun from a desk and shot once; and that the deceased walked away, and defendant followed him to the door and fired two more shots.

Defendant, testifying in his own behalf, stated the story essentially as related by his father. He further testified that he drew the gun and started shooting because he

saw deceased put his hand in his pocket; that he shot the second time because the deceased said he was going to get his gun from the car, and the defendant knew of the decedent's bad reputation.

Evidence was also adduced to the effect that deceased's general reputation was bad, and that of the defendant was good.

Defendant's first contention is that he was denied a fair trial because the broken English of the State's witnesses was incomprehensible; that the failure to provide a proper interpreter was a denial of due process. Because of defendant's insistence that the testimony was so incomprehensible as to make abstracting difficult, we have gone to the original record. Upon a review of the entire record we feel that this contention is without substance. While some of the facts are in dispute, there is no question of the meaning of the individual witnesses on all material points. We further find no error in the decision of the trial court to dispense with the services of the interpreter. Defendant conceded in his brief that such a decision is generally within the discretion of the trial judge, and we think it clear that there was no abuse of discretion in the instant case. It further appears that counsel for defendant in the trial court was extremely well versed in the Italian language, and made no objection to either the translation of the interpreter nor to the action of the court in dispensing with his services. Cf. *People* v. *Vitale*, 3 Ill. 2d 99.

Defendant next contends that he was not proved guilty beyond a reasonable doubt. Since the fact of homicide is not disputed, the contention is that the evidence shows defendant to have shot and killed in self-defense. Our Criminal Code provides "If a person kill another in self-defense, it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and it must appear also, that the

person killed was the assailant, or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given." Ill. Rev. Stat. 1953, chap. 38, par. 367.

Here the evidence is clear and undisputed that defendant shot decedent in the back from a distance of 35 feet, while decedent was attempting to enter the car of La Bellarte. The only issues in dispute are whether the fight was in the fish store or the liquor store; whether the defendant or the deceased was the aggressor in the original fight; and the exact nature of the dispute that sparked the tragic brawl. While we believe that the jury was justified in believing the State's witnesses that the fight was started by defendant in the De Bellis fish store, we regard these issues as obscuring rather than illuminating the case. As we view the evidence, the only determinative question is whether or not defendant was at the time he shot and killed deceased under a reasonable apprehension of losing his life or of suffering great bodily harm. (*People* v. *Johnson,* 2 Ill. 2d 165.) Whether a killing is justified under the law of self-defense is always a question of fact to be determined by the jury under proper instructions. *People* v. *McClain,* 410 Ill. 280; *People* v. *Smith,* 404 Ill. 125; *People* v. *Jones,* 312 Ill. 190.

If we assume the deceased to be the aggressor, then the facts of the case would be similar to those in *People* v. *Jersky,* 377 Ill. 261, where the deceased was admittedly the aggressor in a fight, but where he left and was returning to his home when he was shot and killed. At page 269 we said: "It is probably true that the deceased provoked the original altercation, but that does not help the defendant any because pursuit and killing after the deceased had abandoned the quarrel could not be self-defense."

After reading the entire record, we feel that the jury was justified in finding that the defendant shot the deceased as he was leaving the scene of the original alterca-

tion, and that the killing was not necessary in order to save the defendant's life, or to prevent the defendant from receiving great bodily harm. Under the law of this State, a person with reasonable apprehension of danger of losing his life or suffering great bodily harm has the right, in self-defense, to take the life of his aggressor. (*People* v. *Johnson*, 2 Ill. 2d 165.) In this case there was no evidence of any fact that could reasonably have been a foundation for defendant's fear of immediate harm to justify the killing.

The only case cited by defendant for the proposition that the proof here is insufficient to sustain the verdict is *Filippo* v. *People*, 224 Ill. 212. There we reversed for erroneous instructions and errors in the admission of evidence, pointing out that the evidence was close on the question of whether defendant shot as deceased was attacking him with a knife. We did not question the right of the jury to determine the fact of self-defense, but pointed out that, because of the disputed questions of fact, "the case was one which called for care and accuracy in directing the jury as to the law as well as in the admission of evidence." We think that case is clearly inapposite here. In the instant case the record is clear that defendant shot the deceased in the back while in flight. No such close question arises.

Defendant also complains of an undue restriction of cross-examination and erroneous refusal to give certain instructions on behalf of the defense. We have carefully examined the rulings complained of on cross-examination, and find that the rulings were either proper or involved matters entirely immaterial to the issues in the case. We have also reviewed the entire body of instructions given the jury and find that the jury was accurately and adequately instructed as to the law of the case. The instruction offered by defendant on the character of deceased was misleading and improper. The jury was also sufficiently instructed on the hypothesis of innocence. We find no re-

versible error in the instructions taken as a whole. To justify a reversal of the verdict of a jury which has heard all the evidence, the error relied upon must either deny the defendant his substantial rights or materially prejudice his case before the jury. (*People* v. *Jersky,* 377 Ill. 261; *People* v. *O'Brien,* 277 Ill. 305.) Such is not the case here. Our comment in the *Jersky case* is equally applicable here. "On the record before us, nothing short of a miscarriage of justice could produce any other judgment, or any lighter punishment than this defendant has already secured."

We find the conclusion inescapable that the defendant was guilty of murder and that he received a fair trial, free of prejudicial error. The judgment of the trial court is accordingly affirmed.

*Judgment affirmed.*