THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL COLEMAN *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 78-1898, 78-1960 cons.

Opinion filed June 24, 1980.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:
Following a bench trial defendants, Michael Whalen, Daniel

Coleman, Patrick Sullivan, David LaRosa, Edmund Jedry, Harris Hunter, James Gaynor, and Raymond Stazak[1] were convicted of aggravated battery. Each defendant was sentenced to the Cook County Department of Corrections for 18 months periodic imprisonment.

At trial seven of the eight defendants (all but Raymond Stazak) were represented by the same retained attorney. These defendants contend that such joint representation denied them effective assistance of counsel. They urge this court to establish a per se rule that trial court warnings or inquiries are required where there is, as here, joint representation of multiple defendants. A second issue is raised on behalf of all defendants pursuing this appeal. They contend the trial court should have considered evidence of provocation by the victim, as defined in the statutory provision pertaining to homicide (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1, 9—2), to reduce aggravated battery to simple battery.

In December of 1977 an Israel Bond Dinner was held in Chicago at the Palmer House to honor Mayor Michael Bilandic as Man of the Year. Ralph Locker, a member of the Jewish Defense League (JDL), had been called by another JDL member to go to the Palmer House and assist those attending in entering the hotel. Locker understood that this assistance might be needed because members of the Chicago Nazi Party had threatened to picket and to impede entrance to the dinner. Locker testified that he was at one of the entrances to the Palmer House and heard a woman shout: "The Nazis are here"; "The Nazis are in a van." The next thing he remembered was waking in a hospital 10 days later with severe head and body injuries.

Prosecution witnesses testified as follows: Dr. Janet Perry Lauerman stated that she saw a large crowd gathered near the same entrance and detected black helmets "bobbing" up and down and long batons or clubs rising and falling above the crowd. She then jumped from the curb into the street and noticed a person lying motionless in the gutter. She approached and ascertained that he was bleeding profusely about the head and, from those tests that she could administer, that he was semi-comotose. Soon after an ambulance arrived.

Alan Houser, a policeman assigned to Loop Traffic Control at an intersection adjacent to the Palmer House, was called to the stand. He testified that he ran toward the hotel after his attention was drawn by the size of the crowd and the actions of four individuals, dressed in military paraphernalia, who were swinging clubs toward the ground. He saw a second group of four, similarly dressed, prodding the gathered crowd with clubs. As he continued toward the hotel, he saw the first set of four

---

[1] Defendants Sullivan and LaRosa have not pursued this appeal; their appeals were dismissed for want of prosecution and their appeal bonds revoked on January 18, 1980.

stop beating the individual on the ground. They exchanged places with the second set of four, who then began beating the victim. Officer Houser made in-court identifications of the eight defendants, placing each in one of the two groups. He also testified that the largest man in the second group of four, identified as Jedry, picked up a wire garbage container and held it over the victim's head as Houser approached. The officer drew his revolver, told Jedry to drop the can and ordered the others to put down their clubs and lie on the ground. These clubs were identified in court as the same 3' by 1½-2" thick poles which initially held the Nazis' signs. Houser stated that the man remained motionless in the gutter while the eight defendants were striking him with their clubs.

Scott Schucart, who was at the Palmer House as an observer at the request of the JDL, testified to substantially the same events as the above witnesses. He added that he had seen the man, later identified as Locker, approach one of the Nazis as they left the van. Locker attempted to rip the sign off the pole carried by the Nazi, then took a step backward. The Nazi holding the sign identified in court as defendant Hunter tried to hit Locker with the pole but Locker blocked the first swing with his arm. The second blow however caught Locker on the side of the head, knocking Locker to the ground. Three other men joined Hunter and continued beating Locker. Locker did not resist at all, making no upward movements. Schucart's remaining testimony paralleled that of the above witnesses. He added that the signs bearing the Nazi slogans detached from defendants' poles as they hit Locker. In at least one case, a defendant pulled the placard from his pole, then struck Locker. Schucart saw no weapon in Locker's hands at any time.

Another witness for the State, Benjamin Lartey, a cab driver, testified that he was at the hotel during the incident. He basically affirmed the events in question as related by the other witnesses.

The defense presented a different version of the incident. Each defendant claimed that he was unaware of how Locker received his injuries. Each testified that he had neither swung at nor attempted to hit Locker, and could offer no explanation for his injuries. Defendant Sullivan testified that he was hit from the rear as he held the door to the van open for the others. When he spun around, Sullivan saw Locker holding something in his hand rolled loosely in newspaper. Defendant Whalen stated that he saw Sullivan on the ground holding his wrist (on direct testimony) or his midsection (on cross-examination). He also saw, as other defense witnesses would testify, several men in white motorcycle helmets. Similarly, as other defendants later testified, he stated that the garbage container was thrown at them and not by them, and that he saw Locker lying in the gutter but did not know what had happened to him.

He further testified that the placards contained "pro-American" slogans such as "Bilandic is a Jew Stud."

The other defendants variously testified that they had been hit by the policemen, by members of the crowd in white motorcycle helmets, or by Locker.

The defense called as an occurrence witness David Rousseau. He stated that he had been at the scene in a white motorcycle helmet and had thrown the garbage container at the Nazis to protect Locker. He did not see any set of four pummeling Locker.

The trial judge, in delivering his verdict, commented that the basic issue was one of witness credibility. He briefly reviewed the testimony and noted:

> "It is regrettable in my view that Locker took the first aggressive action, but his actions did not, in any way, legally justify the violence that followed."

Separate written motions for new trials were presented by both attorneys. The motion on behalf of the seven defendants raised a reasonable doubt contention alone. The motion on behalf of defendant Stazak raised other contentions, none of which are presented by this appeal. A new attorney was engaged to present a "Motion to Reconsider" on defendant Coleman's behalf. This motion was also denied by the trial court. That same attorney is also pursuing this appeal for six of the original eight defendants.

■■ The first issue raised as error is that the trial court failed to either question the attorney who represented the group of seven defendants about possible conflicts of interest or to inquire if defendants were aware of possible prejudice which might arise from multiple representation. The State responds that defendants have waived this contention by their failure to include it in their post-trial motions. Much the same as in *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, in the instant case a claim of ineffective assistance of counsel was never presented in the trial court, either prior to or during the trial, in the post-trial motion, or by the successor attorney in the motion to reconsider made on behalf of defendant Coleman. The court in *Precup* noted that inconsistencies in statements between certain of the witnesses would not alone be enough to raise a substantial claim of conflict of interest between defendants. Therefore the trial judge need not have taken action, sua sponte, during the trial to sever the representation afforded the two defendants. Additionally, the court in *Precup* determined that, absent a showing of plain error, the question of inadequate representation, presented as it was for the first time on appeal, was waived. (*Precup*, at 18-19.) No justification has been presented by defendants in the instant case to

mandate a departure from the waiver rule as dictated in *Precup*. Unless plain error in the trial judge's actions may be shown by the record at bar, the issue has been effectively waived for appeal purposes. See also *People v. Carlyle* (1979), 69 Ill. App. 3d 14, 17-18, 387 N.E.2d 1.

The circumstance of representation by one attorney of more than one co-defendant does not alone raise a presumption of antagonistic positions. (*People v. Durley* (1972), 53 Ill. 2d 156, 160, 290 N.E.2d 244.) Neither bare allegations of conflict of interest (*Durley*) nor speculation about possible stratagems from which conflicting defenses might arise (*People v. McCasle* (1966), 35 Ill. 2d 552, 556, 221 N.E.2d 227) are enough to demonstrate the requisite hostility. The test set out by the Illinois Supreme Court in recent decisions clearly presents the threshold question as whether the court finds an *actual conflict of interest* manifested by the trial record. Once this conflict is found, prejudice is presumed. *People v. Vriner* (1978), 74 Ill. 2d 329, 340, 385 N.E.2d 671 (citing *Holloway v. Arkansas* (1978), 435 U.S. 475, 489, 55 L. Ed. 2d 426, 437-38, 98 S. Ct. 1173, 1181; *Glasser v. United States* (1942), 315 U.S. 60, 75-76, 86 L. Ed. 680, 701-02, 62 S. Ct. 457, 467-68; *People v. Coslet* (1977), 67 Ill. 2d 127, 133; *People v. Kester* (1977), 66 Ill. 2d 162, 168; *People v. Stoval* (1968), 40 Ill. 2d 109, 113).

■■ Defendants here however are unable to point to any instance in the record of actual conflict of interest among the defendants. (See *People v. Berland* (1978), 74 Ill. 2d 286, 301, 385 N.E.2d 649, (*cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 41, 100 S. Ct. 64.) Indeed, each defendant provided by his testimony an alibi for one or more of the other defendants. Each declared that he did not injure Locker. On appeal, defendants are claiming antagonistic defenses since at least one of the defendants might have had the legal justification of self-defense for his actions. Not only is such a claim of antagonistic defenses on balance unsupported by the evidence since at least two witnesses testified to Locker's attempt to step back prior to being attacked, but consideration of such a defense would require this court to "overlook" defendants' own statements at trial. To now speculate that defendants might have raised different conflicting defenses at trial would ask us to condone possible perjury. Presumably, defenses are raised in accord with actual, true perceptions of the incident and are not convenient stratagems and tactics to be used and discarded at various points in the legal process. Since, to prevail on a claim of ineffective assistance of counsel where co-defendants are represented by one attorney, actual conflict manifested at trial must be shown, and the record here reveals no such real or apparent conflict, defendants cannot prevail in their claim. *People v. Mathes* (1979), 69 Ill. App. 3d 275, 283 N.E.2d 39.

■■ Defendants alternatively would have this court impose a per se rule that admonishments are necessary whenever more than two defendants are to be represented by one attorney. Defendants have attempted to distinguish those Illinois cases which say there is no such per se requirement by pointing out that each of those cases involves only two defendants represented by one attorney and not a group of seven, as here. (See, *e.g.*, *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169.) Such a narrow interpretation of the unequivocal language of these cases ("it has been recognized that requiring or permitting one attorney to represent multiple defendants is not a *per se* violation of the right to effective assistance of counsel," (*Spicer*, at 185)) must be rejected. Thus, as *Spicer* specifically notes, although the sixth amendment would prohibit representation by an attorney with conflicting interests, without such a showing of divided loyalties there is no constitutional violation. *Spicer*, at 187.

In the recent case of *People v. Robinson* (1979), 79 Ill. 2d 147, 168-69, 402 N.E.2d 157, our supreme court commented on the delicate nature of such representation while declining to accept a per se rule banning such representation. The court noted proposed Rule 44(c) of the Federal Rules of Criminal Procedure which would require the trial court to "promptly inquire with respect to such joint representation and [to] personally advise each defendant of his right to the effective assistance of counsel, including separate representation." Nonetheless, our supreme court chose to reaffirm the "actual conflict manifested at trial" test for ineffective assistance of counsel in the multiple co-defendant context. *Robinson*, at 169.

Defendants have cited only two cases, both from other jurisdictions, to persuade this court to adopt their suggested per se rule. (*Pirillo v. Takiff* (1975), 462 Pa. 511, 341 A.2d 896, *appeal dismissed & cert. denied* (1976), 423 U.S. 1083, 47 L. Ed. 2d 94, 96 S. Ct. 873; *In re Grand Jury* (3d Cir. 1976), 536 F.2d 1009.) Both of these cases arise in the context of the grand jury proceeding and, defendants' claims to the contrary, neither adopt a per se rule for multiple representation. Indeed, *Pirillo* specifically states, "we are not willing to base our result on the existence of multiple representation per se." (462 Pa. 511, 525, 341 A.2d 896, 903; see also *In re Grand Jury* (3d Cir. 1976), 536 F.2d 1009, 1012 and n.2 (noting that the court in *Pirillo* declined to base its result on the existence of multiple representation per se); *Campbell v. United States* (D.C. Cir. 1965), 352 F.2d 359, 361 (where trial court did not make affirmative inquiries and the record manifested actual prejudice to one defendant from multiple representation, conviction reversed; where, however, trial court did not make inquiries but the record showed no prejudice, conviction

affirmed).) Accordingly, defendants have presented no authority for the adoption of such a per se rule, and their claims of presumptive inadequacy of counsel must be rejected.

■■ Defendants' second contention, that the trial court should have considered, sua sponte, the legal justification of provocation to reduce the crime of aggravated battery to simple battery is similarly without merit. It can be dismissed on any one of three grounds. First, it was not raised as error in the post-trial motion or brought to the trial court's attention at any stage of the proceedings and was thus waived for appeal. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

■■ Secondly, the legal justification of provocation is set out in section 9—2(a) of the Criminal Code to reduce the offense of murder to manslaughter. No reference is made nor can be inferred from this provision that it was intended to carry over to the offense of aggravated battery. (Ill. Rev. Stat. 1977, ch. 38, par. 9—2(a).) Indeed, article 7 of the Criminal Code specifically delineates those defenses which justify or exonerate the use of force. Provocation is not included in this section. (See Ill. Rev. Stat. 1977, ch. 38, pars. 7—1 through 7—14.) We conclude that provocation does not constitute legal justification to reduce the offense of aggravated battery to battery.

The third ground for rejecting defendants' claim is even more persuasive. The assertion of provocation subsumes defendant's admission that he touched the complainant or victim. In the case at bar each defendant testified not only that he did not strike or touch Locker but also that he did not observe any other defendant strike or touch Locker. Their testimony at trial is thus inconsistent with provocation. They now urge as reversible error the trial court's failure to consider a defense precluded by their own testimony. Given the fundamental illogic of defendants' position, we decline to find error on the trial court's part.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

PERLIN, P. J., and DOWNING, J., concur.