THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DOUGLAS CORNELIUS MARCH, Defendant-Appellant.

Fourth District    No. 15490

Opinion filed April 7, 1981.

TRAPP, P. J., specially concurring.
GREEN, J., specially concurring.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Gary J. Anderson and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant, Douglas March, and Donald Dupree, an off-duty deputy sheriff for Vermilion County working as a bouncer at a nightclub, engaged in a gun battle at the Danville club where Dupree was working. Each shot the other. Dupree died. The defendant was charged with murder, unlawful use of a weapon, and criminal trespass to land. The defendant's motion for a change of place of trial was granted, and the defendant's jury trial was held in Coles County. The jury returned verdicts finding the defendant guilty of all charges. Judgment was entered on the murder verdict. The defendant was sentenced to 22 years' imprisonment.

On appeal, he contends: (1) The State failed to prove guilt of murder beyond a reasonable doubt; (2) the prosecutor's conduct denied him a fair trial; (3) error was committed when the trial court refused the defendant's tendered instruction concerning the use of force by an initial aggressor; (4) error was committed when the trial court refused certain defense instructions on voluntary manslaughter; (5) he was denied due process of law because the trial court refused the defense instruction on the elements of murder, which would have instructed the jury that the State, in order to prove murder, must negate beyond a reasonable doubt the elements of voluntary manslaughter; (6) the trial court erred when it refused the defendant's motion *in limine* requesting that the State be precluded from making any reference to the fact that the victim, Donald Dupree, was an off-duty sheriff of Vermilion County; and (7) the defendant was deprived of his constitutional right to a public trial when, over his objection, the press was barred from reporting matters which the jury was not allowed to hear.

The shoot-out occurred in the "Every Now and Thens Club" during early morning hours. Between the defendant and Dupree, 11 shots were fired. During the shoot-out, loud music was playing and strobe lights were swirling in the otherwise dimly lit club. There were 100 to 200 people inside the club—many of them dancing—when the shooting began. Apparently, the conflict arose because the defendant, who had been "barred" from the club, tried to enter while Dupree tried to keep him out.

Given the factual setting of the shoot-out, it is not surprising that the

48

trial testimony of numerous eyewitnesses was often contradictory, confusing, and voluminous.

The defendant contends that he was deprived of his constitutional right to a public trial when, over his repeated strong objections, the press was barred from certain proceedings during trial.

As noted, the place of trial was changed from Vermilion County to Coles County because of considerable pretrial publicity. The trial court judge was obviously attempting to reduce the possibility of nonadmissible material reaching the nonsequestered jury. Thus, during two offers of proof the court excluded the members of the press. The first instance related to exclusion during defendant's offer of proof concerning the date on which he was given written notice that he was "barred" from the Every Now and Thens Club. At that time, the following occurred:

"THE COURT: The Press will leave the Court room.

THE PRESS: Are all of the other spectators going to leave the room also?

THE COURT: Not at this point, no.

THE PRESS: I don't see how you can ask the Press to leave, if you don't ask the rest of the spectators to leave also.

THE COURT: Mr. Sheriff, will you escort the Press out of the Court room.

May the record show that this is being done because the Press has refused to cooperate by not publishing matters that occur outside the presence of the Jury.

⁎ ⁎ ⁎

THE COURT: At the beginning of the trial, I talked to the Reporters and told them that as far as I'm concerned, they could sit in when we sent the jury out, but they weren't to put anything in the newspapers or on radio about what went on when the Jury was sent out of the room—in other words, when we were hearing arguments by the lawyers or testimony that I was going to decide whether the jury could hear or not hear, because I didn't want them to put something in the newspaper or on T.V. where the jury might accidentally hear that I had ruled that the jury couldn't hear. This goes both to your benefit or to the State's, depending on which way—what we're talking about. I told them they could print it after the trial was over, but not until the jury had decided the case. I'm talking now just about what goes on when we send the jury back into Chambers. You're there, you hear what's going on. So, they said that they would go along with that. This morning they came in and told me that their Editor had said that they couldn't go along with that. You know there were several times this last week that I sent the jury out and let the Press stay there. That was

because they had agreed not to print anything of that nature. This morning they told me they couldn't honor their word any longer—they were going to have to print anything that was said, so that was why we changed procedure today. So now they've called their Editor and are going back to what originally happened, so we won't have to kick them out again. Does that explain to you what has been going on, as far as the Reporters are concerned?

MR. MARCH: I understand what he says. Can I comment on it?

[Defense counsel]: Sure.

MR. MARCH: Thank you, Your Honor.

THE COURT: In other words, there's some things happened here a few days ago that you wouldn't have wanted that jury to hear, that I ruled they couldn't hear. Right?

MR. MARCH: No, it wouldn't have made me not [*sic*] a bit of difference.

THE COURT: Well, your lawyers thought they shouldn't hear it anyway, so that's why—

MR. MARCH: From what all has been going on from the start of this that they have printed without a jury present and the benefit of the State's Attorney, I wouldn't care whether the jury printed and released whatever is going on.

THE COURT: I told them they could print anything of the testimony that the jury heard, but I didn't want them to print the arguments or any testimony we said the jury was not supposed to hear because it was improper testimony.

[Defense counsel]: Do you still want to register an objection?

MR. MARCH: Yes, I'd really like to register an objection on that."

The court indicated that after the reporters discussed the situation with their editors, it was decided that they would abide by the limitations imposed. Later this was changed and a reporter was removed, again over the objection of the defendant and over the objections for counsel for the Gannett Publishing Company and the Commercial News of Danville, a Danville newspaper. Specifically, Mr. David Nelson, on behalf of the newspaper, objected "to any exclusion of newspaper reporters in the trial * * * pursuant to the first amendment, the sixth amendment, and the fourteenth amendment of the U.S. Constitution" and cited portions of the Illinois Constitution. Counsel's objection was based upon the reporter being excluded and not being allowed to report the trial events when members of the general public were allowed in the courtroom.

■■ Thus, the issue was joined. There were objections by the defendant and objections on behalf of the press and a partial closing of trial proceedings. The jury was not sequestered. There is nothing to indicate

that sequestration of the jurors would not have guarded against their being subjected to any improper information. The action of the trial court was error. The defendant has a constitutional right to a public trial. The press, as surrogate for the public, has a constitutional right to be present and fully report the events of the trial. The following quotes from the various opinions filed in the watershed case of *Richmond Newspapers, Inc. v. Virginia* (1980), ___ U.S. ___, 65 L. Ed. 2d 973, 100 S. Ct. 2814, apply:

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing. When a criminal trial is conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case:

'The educative effect of public attendance is a material advantage. Not only is respect for the law increased and intelligent acquaintance acquired with the methods of government, but a strong confidence in judicial remedies is secured which could never be inspired by a system of secrecy.' [Citation.]

In earlier times, both in England and America, attendance at court was a common mode of 'passing the time.' See, e.g., 6 Wigmore, supra, at 436; Mueller, supra, at 6. With the press, cinema, and electronic media now supplying the representations or reality of the real life drama once available only in the courtroom, attendance at court is no longer a widespread pastime. Yet '[i]t is not unrealistic even in this day to believe that public inclusion affords citizens a form of legal education and hopefully promotes confidence in the fair administration of justice.' State v. Schmit, 273 Minn 78, 87-88, 139 NW2d 800, 807 (1966). Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media. In a sense, this validates the media claim of functioning as surrogates for the public.

* * *

In guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those explicit guarantees. '[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw.' First National Bank of Boston v. Bellotti, 435 US 765, 783, 55 L Ed 2d 707, 98 S Ct 1407 (1978). Free speech carries with it some freedom to listen. 'In a variety of contexts this Court has referred to a First Amendment right to "receive information

and ideas." ' Kleindienst v. Mandel, 408 US 753, 762, 33 L Ed 2d 683, 92 S Ct 2576 (1972).

＊ ＊ ＊

We hold that the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.' Branzburg, supra, at 681, 33 L Ed 2d 626, 92 S Ct 2646.

＊ ＊ ＊

Until today the Court has accorded virtually absolute protection to the dissemination of information or ideas, but never before has it squarely held that the acquisition of newsworthy matter is entitled to any constitutional protection whatsoever.

＊ ＊ ＊

Because I believe that the First Amendment—of itself and as applied to the States through the Fourteenth Amendment—secures such a public right of access, I agree with those of my Brethren who hold that, without more, agreement of the trial judge and the parties cannot constitutionally close a trial to the public.

＊ ＊ ＊

More importantly, public access to trials acts as an important check, akin in purpose to the other checks and balances that infuse our system of government. 'The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power,' In re Oliver, supra, at 270, 92 L Ed 682, 68 S Ct 499—an abuse that, in many cases, would have ramifications beyond the impact upon the parties before the court. Indeed, ' "[w]ithout publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account." ' Ibid., at 271, 92 L Ed 682, 68 S Ct 499, quoting 1 Bentham, Rationale of Judicial Evidence 524; see 3 Blackstone, Commentaries, *372; Hale, History of the Common Law 344; 1 J Bryce, The American Commonwealth 514 (1931)." ___ U.S. ___, ___, 65 L. Ed. 2d 973, 986-1002, 100 S. Ct. 2814, 2825-38.

Although this court has failed to reach a consensus on this issue, I would hold under the authority of the *Richmond Newspapers, Inc.* case that absent an overriding interest articulated in express findings, the trial of a criminal case must be open to the public. This trial was not open and no overriding interest is suggested nor articulated; thus, the case must be retried.

Even though we have not reached a consensus on this issue, it is clear that if this issue reoccurred upon a retrial, a majority of this court would hold that closure orders of the type entered in this case would be uncon-

stitutional under *Richmond Newspapers*. In fairness to the trial court, we note that the seminal *Richmond Newspapers* case had not been decided when the trial entered its closure order.

■■ The defendant argues that the State failed to negate his self-defense claim beyond a reasonable doubt, or, alternatively, at most the State's evidence showed that the defendant committed voluntary manslaughter. The question of whether one acted in self-defense is a question to be determined by the jury. (*People v. Maurantonio* (1956), 8 Ill. 2d 60, 132 N.E.2d 515.) On this issue, it has been said that the jury's determination will not be disturbed on review unless the evidence is palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt as to the defendant's guilt. *People v. Jordan* (1960), 18 Ill. 2d 489, 165 N.E.2d 296.

At least nine eyewitnesses, other than the defendant, testified that they saw Dupree draw or fire his gun first. However, one eyewitness testified that the defendant drew his gun first, and that Dupree then drew his gun; they stood facing each other for a few seconds and then according to this one witness the defendant fired the first shot.

We hold that the State did present sufficient evidence to support the jury's tacit finding that the defendant was not acting in self-defense. This record presents an issue of fact for the jury—not a question of law for this court or for the trial court.

The defendant contends that the trial court erred when it refused the defendant's tendered instruction concerning the use of force by an initial aggressor. Illinois Pattern Jury Instructions, Criminal, No. 24.09 (1968) (hereinafter cited as IPI Criminal) was given at the State's request and in relevant part reads:

"A person who initially provokes the use of force against himself, is justified in the use of force only if

[1] the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person."

However, the defendant tendered, and the trial court refused, a modified version of the same instruction (No. 24.09):

"*If you find that the State has proven beyond a reasonable doubt that the defendant initially provoked the use of force against himself,* he is justified in the use of force only if:

(1) the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he *reasonably believes* he has exhausted every reasonable means to escape the danger * * *." (Emphasis added.)

IPI Criminal No. 24.06, an instruction defining when the use of force is justified, was given at the defendant's request.

In addition to the instructions on self-defense, the murder instruction given to the jury stated that a jury could not convict a defendant of murder unless the State could prove beyond a reasonable doubt that a defendant was not justified in using the force which he used. The jurors also were instructed about the presumption of innocence and the State's burden of proof.

The defendant's contention is that if the trial court had given its tendered version of IPI Criminal No. 24.09 in conjunction with the self-defense instruction (IPI Criminal No. 24.06), then the jury would have been informed that the State had to prove beyond a reasonable doubt that the defendant was the initial aggressor before the law stated in either version of IPI Criminal No. 24.09 was applicable instead of the law as stated in IPI Criminal No. 24.06.

In *People v. Day* (1972), 2 Ill. App. 3d 811, 277 N.E.2d 745, the defendant contended that the introductory language to IPI Criminal No. 24.09 erroneously assumed as a fact that the defendant had initially provoked the encounter although there was conflicting evidence on this point. The court held that where there was conflicting evidence as to who was the initial aggressor, as there is in this case, and the jury is also given IPI Criminal No. 24.06, as the jury was in this case; the giving of IPI Criminal No. 24.09 is not error.

■■ Considering all of the jury instructions given, we agree with the State that it was evident that the State had the burden of negating a self-defense claim by proof beyond a reasonable doubt. Thus, the trial court committed no reversible error when it refused the defendant's modified instruction IPI Criminal No. 24.09.

■■ However, the trial court's refusal of certain tendered instructions on voluntary manslaughter was error. The jury did receive the definitional and elements instruction regarding manslaughter as defined in section 9—2(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—2(b)). However, the trial court refused to give the defendant's tendered instructions No. 71, IPI Criminal No. 7.03, and No. 38, IPI Criminal Nos. 7.04, 7.06, and 25.05E, which are the definitional and elements instructions for manslaughter regarding sudden and intense passion resulting from serious provocation. (See Ill. Rev. Stat. 1977, ch. 38, par. 9—2(a).) The defendant was prejudiced, and it was reversible error for the trial court to refuse the defendant's tendered jury instructions on manslaughter as defined in section 9—2(a).

> "It is a settled rule that where there is evidence which if believed by a jury would reduce a crime to a lesser included offense, an instruction defining that offense should be given. [Citations.] This

rule is applicable even if the theory of defense is inconsistent with the possibility that the defendant is guilty of the lesser crime. [Citations.] A defendant in a criminal case is entitled to have the jury consider any legally recognized defense theory which has some foundation in the evidence, however tenuous. [Citations.] Very slight evidence on a theory of defense will justify the giving of an instruction." *People v. Dortch* (1974), 20 Ill. App. 3d 911, 914, 314 N.E.2d 324, 325-26.

The Committee Comments to section 9—2 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—2) make it clear that mutual quarrel or combat and substantial physical injury or assault are recognized categories of serious provocation. Also see *People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.

The State argues that, at most, the evidence, if credible, establishes "that the two men scuffled momentarily near the door." Although it is up to the jury to decide what evidence is credible, it cannot carry out this function properly unless it has been correctly instructed on the applicable law. As pointed out in *Dortch*, and by this court in *People v. Johnson* (1971), 1 Ill. App. 3d 433, 274 N.E.2d 168, the defendant is entitled to an instruction on manslaughter as defined in section 9—2(a) as long as there is evidence, which if believed by a jury, would reduce the murder charge to the lesser included offense of manslaughter. Indeed, the Illinois Supreme Court has stated that in homicide cases if there is evidence in the record whch if believed by the jury would reduce the crime to manslaughter, an instruction defining that crime should be given. *People v. Jones* (1943), 384 Ill. 407, 51 N.E.2d 543.

There is evidence which, if believed, shows that the defendant committed manslaughter as defined in section 9—2(a). There was conflicting evidence as to who drew and fired first, and quite a few of the eyewitnesses testified that the defendant and Dupree engaged in a fist fight before any gunshots were exchanged.

It was reversible error for the trial court not to instruct the jury on the issue of manslaughter as defined in section 9—2(a). For purposes of remand, it should be noted that it is permissible to instruct the jury as to both types of voluntary manslaughter. (See *People v. Bruno* (1979), 68 Ill. App. 3d 768, 386 N.E.2d 550.) The discussion of self-defense and manslaughter instructions found in the recent case of *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378, will be dispositive of the issues with reference to this instruction matter upon retrial.

■■ In like vein, the defendant contends that the trial court's refusal of the defendant's tendered murder instruction potentially allowed the jury to erroneously convict the defendant of murder.

Together with IPI Criminal No. 7.01 (definitional murder instruc-

tion), the following murder instruction—IPI Criminal Nos. 7.02 and 25.05—was given:

> "To sustain the charge of murder, the State must prove the following propositions:
>
> First: That the defendant performed the acts which caused the death of Donald Dupree;
>
> Second: That when the defendant did so,
>
> (1) he intended to kill or do great bodily harm to Donald Dupree, or
>
> (2) he knew that his act would cause death or great bodily harm to Donald Dupree, or,
>
> (3) he knew that his acts created a strong probability of death or great bodily harm to Donald Dupree; and
>
> Third: That the defendant was not justified in using the force which he used.
>
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The defendant's tendered murder instruction which was refused by the trial court was identical to the above instruction except for the following two additional paragraphs:

> "Fourth: That the defendant did not act under a sudden and intense passion resulting from serious provocation by Donald Dupree; and
>
> Fifth: That the defendant did not believe that circumstances existed which justified the use of the force which he used."

Thus, defendant's refused instruction required the jury to find that the State had negated the elements of voluntary manslaughter beyond a reasonable doubt before they could convict him of murder.

As noted earlier, the jury returned a verdict finding the defendant guilty of murder. It did not return a verdict on the lesser offense of voluntary manslaughter.

The question this issue presents is whether the jury must be instructed that the State has to negate the elements of voluntary manslaughter beyond a reasonable doubt before it can convict the defendant of murder. (See *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881; *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319; and Jefferies & Stephan, *Defenses, Presumptions, and*

*Burden of Proof in the Criminal Law*, 88 Yale L.J. 1325 (1978).) This issue raises complex questions of constitutional law and statutory interpretation. Even without deciding this issue, it is clear that the defendant's conviction in this case must be reversed. Therefore, because this is a question of constitutional magnitude that may not recur on remand, I would not decide this issue. However, the majority of this court, for the reasons expressed in the following concurrences, holds that the murder instructions, as given, were correct. The trial court is not required to instruct the jury that the State must negate the elements of voluntary manslaughter beyond a reasonable doubt before they could convict him of murder.

■■ Next, the defendant contends that the trial court erred when it refused the defendant's motion *in limine* which requested that the State be precluded from making any reference to the fact that the victim, Donald Dupree, was an off-duty deputy sheriff of Vermilion County. Both parties correctly argue that the test for admissibility of that information is one of relevancy and materiality. The test is whether the evidence tends to prove the offense charged or any element of the offense. (*People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.) If there is a new trial, this evidence should not be admitted unless its relevancy is more clearly established by the State than was done in this proceeding.

At trial, the State mentioned several times the fact that Dupree was employed as a deputy sheriff; however, it never showed how that fact had any bearing on any issue in controversy. As the Illinois Supreme Court stated in *People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 395, relevancy is established where a fact offered tends to prove the fact in controversy or renders a matter in issue more or less probable.

If, as the State contends, the defendant was the person who started the altercation between the two, it makes no difference as far as the defendant's assertion of self-defense that Dupree was an off-duty deputy sheriff. Indeed, if the defendant escalated the conflict by drawing his gun first and/or firing it first, Dupree's choice of response was not enlarged by the fact that he was an off-duty deputy sheriff. On the other hand, even assuming that Dupree as an off-duty sheriff had the legal right to initiate physical contact between the two, neither he nor the defendant had the right to use deadly force. See Ill. Rev. Stat. 1977, ch. 38, par. 7—5(a)(1)(2).

The remaining issues raised are also such as are not likely to recur upon retrial. We need not discuss them here since they do not affect the judgment that we reach. We conclude that the defendant was not afforded a fair trial before a properly instructed jury and for that reason this conviction must be reversed and the cause remanded to the circuit court for a new trial.

Reversed and remanded for a new trial.

Mr. PRESIDING JUSTICE TRAPP, specially concurring:

While I concur with the conclusion that the trial court erred in denying defendant's tendered instruction upon the issue of voluntary manslaughter and that the cause must be reversed and remanded for a new trial, I agree with the reasoning of Mr. Justice Green that it is unnecessary to decide whether there was a violation of defendant's right to a public trial under the sixth amendment.

In addition, the record discloses that the issue was neither presented to the trial court, nor preserved in the post-trial motions, but is first raised upon appeal. Again the record discloses that the defendant was not, in fact, deprived of a public trial, because it is apparent that the general members of the public were present throughout the trial.

While the cited *Richmond Newspapers, Inc.* has developed the rights of the public and press to be present at trials upon the authority of the first amendment, the rationale of such decision does not provide a new and additional right to defendant by reason of such amendment. Neither does it appear that there was such deprivation of a right to a public trial as to constitute plain error.

While Justice Green and I agree that upon a new trial the issue of defendant's refused murder instruction shall probably again be present and should be reviewed, I would hold that there was no error.

Defendant contends that the trial court erred in giving Illinois Pattern Jury Instructions, Criminal, No. 25.05 (IPI No. 25.05) defining the prosecution's burden of proof upon the charge of murder because it failed to require that the prosecution negate beyond a reasonable doubt (1) that defendant acted under sudden passion resulting through serious provocation and, (2) that defendant believed that the circumstances justified the force used.

Suggesting a constitutional question, the opinion cites *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881, and *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319. The challenged instruction, which is stated in full in the majority opinion, is neither in the language form nor substance which are found in the cited cases.

Neither the *Mullaney* nor the *Patterson* opinion states the verbatim instructions used. *Mullaney* summarizes the given instruction as follows:

"The jury was further instructed, however, that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the *defendant proved by a fair preponderance of the evidence* that he acted in the heat of passion on sudden provocation." (Emphasis added.) 421 U.S. 684, 686, 44 L. Ed. 2d 508, 512, 95 S. Ct. 1881, 1883.

The *Mullaney* opinion emphasized that it was bound by the determination of the Maine Supreme Court that murder and manslaughter "are not distinct crimes but, rather, different degrees of the single generic offense of felonious homicide." 421 U.S. 684, 688, 44 L. Ed. 2d 508, 513, 95 S. Ct. 1881, 1884.

The Maine court further stated:

> "[T]hat for more than a century it repeatedly had held that the prosecution could rest on a *presumption of implied malice aforethought* and require the defendant to prove that he had acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter." (Emphasis added.) (421 U.S. 684, 688, 44 L. Ed. 2d 508, 513, 95 S. Ct. 1881, 1884.)

Upon such circumstances, the United States Supreme Court held that there was an unconstitutional placing of a burden of proof upon the defendant.

In *Patterson*, a New York statute provided that the elements of murder included causing a death plus the intent to cause death, and that an affirmative defense could be raised if defendant: " 'acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse.' " 432 U.S. 197, 198, 53 L. Ed. 2d 281, 285, 97 S. Ct. 2319, 2321.

New York defined a further offense of manslaughter as the intentional killing of another " 'under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance.' " 432 U.S. 197, 199, 53 L. Ed. 2d 281, 285, 97 S. Ct. 2319, 2321.

That defendant raised the affirmative defense that he acted under the influence of extreme emotional disturbance. The opinion summarizes the jury instruction:

> "The jury was further instructed, consistently with the New York law, that the defendant had the burden of *proving his affirmative defense* by a preponderance of the evidence. The jury was told that if it found beyond a reasonable doubt that appellant had intentionally killed Northrup but that appellant had demonstrated by *a preponderance of the evidence* that he had acted under the influence of extreme emotional disturbance, it had to find appellant guilty of manslaughter instead of murder." (Emphasis added.) 432 U.S. 197, 200, 53 L. Ed. 2d 281, 286, 97 S. Ct. 2319, 2322.

The trial court had also instructed the jury, apparently at a time prior to the quoted summary, that it was always the prosecution's burden to prove defendant's guilt, and to prove that he intended to kill beyond a reasonable doubt.

The New York Court of Appeals determined that there was no shifting of the burden of proof to the defendant to disprove any fact

essential to the offense charged since the affirmative defense raised bears no direct relationship to any element of murder.

*Patterson* determined that the affirmative defense constitutes "a separate issue on which the defendant is required to carry the burden of persuasion" and continued:

"If the State nevertheless chooses to recognize a factor that mitigates the degree of criminality or punishment, we think the State may assure itself that the fact has been established with reasonable certainty. To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, * * *." (432 U.S. 197, 207, 209, 53 L. Ed. 2d 281, 290, 291, 97 S. Ct. 2319, 2325, 2326.)

Upon such record, the United States Supreme Court held that there was no violation of due process.

I do not believe that the cited authorities can be fairly stated to support a determination that the given instruction IPI Criminal No. 25.05, regarding the prosecution's burden of proof, was error requiring reversal. There was no overt statement placing any burden upon defendant as in *Mullaney* and *Patterson*. The IPI Criminal cautionary instructions provided for the presumption of innocence, the continuing requirement that the prosecution must prove guilt beyond a reasonable doubt, and that defendant is not required to prove his innocence. In addition, the challenged instruction requires that the prosecution must prove beyond a reasonable doubt "Third: that the defendant was not justified in using the force which he used."

Section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—2) defines the offenses of voluntary manslaughter as a person (a) who kills an individual without "lawful justification" if he acts under intense passion resulting from serious provocation, and (b) an intentional or knowing killing is done with the belief that the circumstances would justify or exonerate the act under section 7 of the Code. In *People v. Lockett* (1980), 82 Ill. 2d 546, 554-55, 413 N.E.2d 378, 383, it is stated:

"Prior to the 1961 revision of the Code, cases of voluntary manslaughter referred only to situations where the killing was the result of a sudden and intense provocation. The unreasonable-use-of-force element was first enacted in 1961."

In *People v. Goolsby* (1979), 70 Ill. App. 3d 832, 388 N.E.2d 894, *appeal denied* (1979), 79 Ill. 2d 614, it is pointed out that the respective statutory forms of voluntary manslaughter define two different offenses with differing mental elements which cannot be present at the same time.

Article 7 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 7—1 through 7—14) defines the several circumstances in which the use of force is deemed justified or exonerated. Section 7—14 states that acts

which would justify or exonerate the defendant constitute an affirmative defense. By definition, voluntary manslaughter in the context of provocation as in paragraph 9—2(a) is a killing without legal justification. The definition negates a theory that the provocation offense may be styled an affirmative defense to murder.

In *People v. Coleman* (1980), 85 Ill. App. 3d 1020, 1026, 407 N.E.2d 832, 837, it was contended that "that legal justification of provocation" should reduce the offense of aggravated battery to simple battery. The opinion states:

> "Indeed, article 7 of the Criminal Code specifically delineates those defenses which justify or exonerate the use of force. Provocation is not included in this section. (See Ill. Rev. Stat. 1977, ch. 38, pars. 7—1 through 7—14.)"

It is held that where there is evidence of self-defense, the prosecution must prove beyond a reasonable doubt that defendant did not act in self-defense. (*People v. Graves* (1978), 61 Ill. App. 3d 732, 378 N.E.2d 293.) In *People v. Sunquist* (1977), 55 Ill. App. 3d 263, 370 N.E.2d 864, *appeal denied* (1978), 71 Ill. 2d 600, it was held that where such defense is presented, the instruction IPI Criminal No. 25.05 is the proper issue instruction. (See also *People v. Wright* (1975), 32 Ill. App. 3d 736, 336 N.E.2d 18; and *People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85.) That instruction was given here, including the specific requirement that the prosecution must prove that defendant was not justified in using the force which was used.

No case has been cited which holds that provocation, as defined in section 9—2(a) is an affirmative defense which must be negated by the prosecution and that the jury must be so instructed. I have found no such reference. Assuming, *arguendo*, that provocation in the context of section 9—2(a) in fact justifies or exonerates the charge of murder, that portion of IPI Criminal No. 25.05 requiring that the prosecution must prove that defendant was not justified in using the force used, that instruction should suffice to correctly state the prosecution's burden of proof just as when there is an issue of self-defense. In such context, there is no shifting of a burden of proof to defendant.

Mr. JUSTICE GREEN, specially concurring:

I concur in the determination to grant the defendant a new trial.

For the reasons stated, I agree that reversible error resulted from the refusal to instruct on the issue of voluntary manslaughter as defined in section 9—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a)).

I interpret *Richmond Newspapers, Inc. v. Virginia* (1980), __U.S. __, 65 Ill. Ed. 2d 973, 100 S. Ct. 2814, as speaking only to the first

amendment right of persons to attend trials and not to an accused's right to an open trial. However, on retrial, the rule established there would prevent the court from entering an order similar to the instant one conditioning the presence at trial of a media representative upon an agreement to withhold publication of material likely to prejudice the accused. As the issue is thus most unlikely to recur upon retrial, we need not decide whether the restriction upon the attendance of the media representative violated this defendant's right to an open trial.

As the question of the proper issues instruction as to the offense of murder will likely arise at retrial, we must speak to that question. Although I consider the issues instruction on murder tendered by defendant requiring the State to negate the special elements of voluntary manslaughter to be logical, I do not deem its use to be supported by precedent or constitutionally required. I agree with the analysis of Mr. Justice Trapp that the combined effect of *Mullaney v. Wilbur* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881, and *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319, refutes any constitutional requirement for the instruction. The format of IPI Criminal is devoid of any requirement that the State negate the elements of provocation or an unreasonable belief by the defendant that his conduct was necessary to protect himself. No case applying the Criminal Code of 1961 has so required. Accordingly, we cannot say that the trial court erred in refusing the instruction here and cannot require that it be given on retrial.

The dispute concerning the murder issue instruction arises because, although a lesser and, perhaps, an included offense of murder, voluntary manslaughter includes all of the elements of murder and in addition the elements of provocation or unreasonable belief of the necessity to act in self-defense. Accordingly, although an accused may have been proved guilty beyond a reasonable doubt of voluntary manslaughter, the State has thereby literally met all of the requirements of IPI Criminal No. 7.02 to sustain a charge of murder. Presumably, the jury would nevertheless conclude that IPI Criminal Nos. 7.04 or 7.06 controlled and required a guilty verdict only as to voluntary manslaughter. Suppose, however, the jury here had concluded that all the elements of murder had been proved beyond a reasonable doubt but also concluded that the additional elements of one type of voluntary manslaughter had been proved by a preponderance of the evidence. Under the instruction given, the jury would be required to find the defendant guilty of murder. I do not deem such a result to be sensible, but, apparently, it is the rule that has existed since the adoption of the Criminal Code of 1961.

The problem described above would be avoided by defendant's theory that to obtain a murder conviction the State should have the

burden of negating beyond a reasonable doubt the existence of the factors reducing a murder charge to voluntary manslaughter when evidence of those factors is presented. Concomitant with such a rule would be one that proof of the elements of murder would always support a voluntary manslaughter conviction when some evidence of that type of voluntary manslaughter was presented. Voluntary manslaughter would then truly be an included offense of murder.